**Kenneth CRANDELL, Petitioner–Appellee,**

**v.**

**Bill J. BUNNELL, Warden; Attorney General of the State of California, Respondents–Appellants.**

No. 96–56644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1998.

Decided May 19, 1998.

Donald J. Oeser and Paul C. Ament, Los Angeles, CA, for respondents-appellants.

John W. Poulos, Davis, CA; Michael V. White, Santa Monica, CA, for petitioner-appellee.

Before: PREGERSON, BEEZER and HALL, Circuit Judges.

## OPINION

BEEZER, Circuit Judge:

Crandell petitions for a writ of habeas corpus. He alleges that he was faced with an unconstitutional choice of incompetent counsel or no counsel at all. We previously held that Crandell's petition asserted facts sufficient to state a claim and remanded to the district court for an evidentiary hearing. *Crandell v. Bunnell*, 25 F.3d 754 (9th Cir. 1994) (per curiam). Crandell's claim was borne out at the evidentiary hearing and the district court granted the petition. The state timely appealed and issuance of the writ was stayed. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm. We remand with instructions to the district court so that the writ may issue.

I

The facts underlying Crandell's petition are set forth in our earlier opinion, *Crandell*, 25 F.3d 754, and in the California Supreme

Court's opinion, *People v. Crandell,* 46 Cal.3d 833, 251 Cal.Rptr. 227, 230–31, 760 P.2d 423, 427 (1988). For our purposes here, we note the following facts. In July 1980, Kenneth Crandell was living with Ernest Pruett and his family. On the night of July 5, 1980, Ernest Pruett and Crandell engaged in an argument. Crandell shot and killed Ernest and Edward Pruett, Ernest's eldest son. On the following morning, Crandell attempted to rape Marie, Ernest's 15 year-old daughter.

On July 9, 1980, Deputy Public Defender Gordon was appointed to represent Crandell. On September 22, 1980, defendant appeared in state court to argue a number of pro se motions. The state trial judge asked why Crandell was representing himself and Crandell replied that it was because he had not heard from Gordon in almost two months and that Gordon was "completely ineffective." Crandell's repeated motions to have alternative counsel appointed were denied.

Crandell represented himself at trial in state court and was convicted on January 5, 1982, of two counts of the first degree murder of Ernest and Edward Pruett, each with a special circumstance of multiple murder, one count of assault with intent to commit rape and one count of kidnapping. Crandell was sentenced to death. The California Supreme Court affirmed the judgment of guilt and reversed the death sentence.

In 1990, Crandell filed a petition for writ of habeas corpus in federal district court alleging that he did not voluntarily waive his right to counsel and elect to proceed pro se at trial. The district court dismissed the petition. We reversed, holding that "Crandell could not have been forced to choose between incompetent counsel and no counsel at all"

and remanded to the district court for an evidentiary hearing. *Crandell,* 25 F.3d at 755. On remand, the district court found that Gordon's representation "fell below an objective standard of reasonableness under prevailing professional norms for capital cases."

## II

The state asserts on appeal that the district court erred in finding that Crandell's counsel was incompetent.[1] Whether Crandell voluntarily waived his right to counsel and elected self-representation is a mixed question of law and fact reviewed de novo. *Crandell v. Bunnell,* 25 F.3d at 754 (citing *United States v. Robinson,* 913 F.2d 712, 714 (9th Cir.1990)). "[A] criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive." *Id.* at 755 (quoting *Robinson,* 913 F.2d at 715). We have previously held that where an indigent defendant is appointed a particular public defender "with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not in any manner whatsoever, communicate," the defendant's constitutional rights are violated. *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970). Our previous holding in this case is simply an application of the rule in *Brown.*[2]

The state asserts that "the crucial factor" in the panel's inquiry is "that the period of representation at issue here was a two-month period, which was one month before the preliminary hearing was set to begin." The state's argument can be interpreted in two

1. In its brief, the state first argues that the panel should apply the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, Title I, 110 Stat. 1214 (Apr. 24, 1996). The Supreme Court has held that AEDPA does not apply to cases pending as of the date AEDPA was enacted, April 24, 1996. *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *see also Jeffries v. Wood,* 114 F.3d 1484 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). Because the present petition was filed in 1990, AEDPA does not apply.

2. In its reply brief in this second appeal, the state asserts for the first time that reversal is appropri-

ate under the new rule test of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We have held that where an issue is argued for the first time in a reply brief we have discretion to consider it waived. *Martinez v. Ylst,* 951 F.2d 1153, 1156–57 (9th Cir.1991); *see also Duckett v. Godinez,* 67 F.3d 734, 746. n. 6 (9th Cir.1995) (where *Teague* is not raised in district court we have discretion to consider the defense waived); *Jordan v. Ducharme,* 983 F.2d 933 (9th Cir.1993) (same); and *Boardman v. Estelle,* 957 F.2d 1523, 1534 (9th Cir.1992) (per curiam) (a detailed discussion of waiver and *Teague* ). In any event, the rule we apply today predates the time Crandell's state court conviction became final. *See Brown,* 424 F.2d 1166.

ways: (1) Crandell must (but cannot) show that he was prejudiced by the incompetent representation; or (2) the district court's finding of incompetence is not supported by the record because the subject period was early in the proceedings. We reject both arguments.

## A

■ Crandell need not show prejudice in the instant matter. "When reviewing the denial of a motion to substitute counsel for abuse of discretion, we consider the following three factors: '(1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense.'" *Bland v. California Dept. of Corrections,* 20 F.3d 1469, 1475 (9th Cir. 1994) (quoting *United States v. Walker,* 915 F.2d 480, 482 (9th Cir.1990)). *"Brecht's* harmless error analysis does not apply when a defendant has been denied the right to substitute counsel[;] . . . harmless error analysis applies only to trial errors and not to structural defects." *Bland,* 20 F.3d at 1478 (citing *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)); *see also Lofton v. Procunier,* 487 F.2d 434 (9th Cir.1973) (denial of motion for substitute counsel remanded for evidentiary hearing of competency without discussion of prejudice). "Denial of the qualified right to counsel of choice is reversible error regardless of whether prejudice is shown." *Id.* (citing *United States v. Ray,* 731 F.2d 1361, 1365–66 (9th Cir.1984)). "A prejudice requirement has no applicability to counsel of choice cases since, unlike the right to counsel of choice, the right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id.* (quoting *Wilson v. Mintzes,* 761 F.2d 275, 285 (6th Cir.1985)). That a defendant cannot be forced to choose between incompetent counsel and no counsel at all implicates the fundamental fairness and accuracy of the criminal

proceeding and a showing of prejudice is therefore not required.

## B

■ We previously remanded to "the district court for an evidentiary hearing on whether Crandell's attorney was competent at the time Crandell chose to refuse further representation and proceed pro se." *Crandell,* 25 F.3d at 755. Implicit in our holding is that if the district court found incompetency, the court should grant the petition and the writ would issue. This is the law of the case.

■ To determine whether Crandell was competently represented, the district court employed the first prong of the ineffective assistance of counsel standard in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3] Under this analysis, Crandell must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is [Crandell] must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Review of counsel's strategic decisions must be highly deferential so as to avoid the hindsight consideration of an unsuccessful defense. *United States v. Appoloney,* 761 F.2d 520, 525 (9th Cir.1985). The rationale for *Strickland* applies here. We hold that the district court properly employed the deferential first prong of the *Strickland* standard to determine competency of counsel.

■ In a federal habeas action, a claim of ineffective assistance of counsel presents mixed questions of fact and law and is reviewed de novo. *Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994) (quoting *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052). "[A] federal district court's findings and its adoption of the findings of a federal magis-

---

**3.** Counsel refer to "ineffective assistance" and "incompetent assistance" as though they were interchangeable. The term "ineffective assistance of counsel" is appropriate when referring

to *Strickland* analysis and "incompetent assistance of counsel" is at issue in the present matter.

trate judge are reviewed under the clearly erroneous standard." *Id.* at 1452; *see also McKenna v. McDaniel,* 65 F.3d 1483, 1490 (9th Cir.1995).

 The magistrate judge made the following findings. As of 1980, Gordon had worked as a deputy public defender for twenty years, including the trial of 15 to 20 murder cases and one death penalty case that went to the jury. Gordon's first interview with Crandell occurred on July 9, 1980 prior to a preliminary hearing scheduled for July 21. On July 21, Gordon requested and was granted a continuance of the hearing to October 20. The preliminary hearing was ultimately conducted pro se beginning on January 5, 1981. From July 21 to September 22, a period of 63 days, Gordon did not confer with Crandell. Crandell's letters and phone calls during that period received no response. Previously, Gordon had visited Crandell at least once and not more than three times. During the visit(s) Gordon asked Crandell if he would plead guilty to lesser charges and Crandell "angrily rejected" the suggestion. Each interview ended in "violent disagreement." The Magistrate Judge found that Gordon "failed to make reasonable efforts to establish a relationship of trust and confidence with Crandell."

Gordon's discovery efforts were limited to relying on an "open file" policy with the prosecutor, efforts that resulted in the production of approximately 30 pages of documents. Later, representing himself, Crandell made formal discovery motions which resulted in the production of 191 pages of responsive documents.

From July 9 through September 22, Gordon initiated no investigation of guilt phase evidence and no investigation of penalty phase evidence. Gordon made no attempt to interview any witnesses, including the coroner who conducted the autopsies of the victims, the coroner's investigator, Marie Pruett or any potential expert consultants or witness. Gordon's work on the case during that period was limited to minimal open file discovery, one to three meetings with his client and discussions of the case with the prosecutor.

Based on this minimal work, Gordon concluded that Crandell did not have a triable case. Gordon decided to wait out his client and the prosecutor until they both realized that a plea bargain was the best course of action. Gordon was willing to wait "as long as it took" for both Crandell and the prosecutor to "simmer down." Similarly, Gordon decided not to interview Marie Pruett because he didn't want to "hassle her."

At the hearing on remand, Crandell presented an expert witness on the prevailing professional norms for capital defense cases. The expert characterized Gordon's behavior as "absolutely outrageous." The expert's conclusion was based in part on the American Bar Association Guidelines for death penalty lawyers, which provide that

> trial Counsel shall maintain close contact with the client throughout the preparation of a case, discussing (inter alia) the investigation, potential legal issues that exist or develop and the development of a defense theory.

ABA Guidelines, Guideline 11.4.2. The state presented no rebuttal testimony.

Crandell favored a "self-defense/mutual combat" defense. This theory did not comport with the evidence that Edward Pruett had been shot through a pillow at close range. This theory also did not explain the attempted rape of Marie Pruett. Given the evidence, Gordon decided that Crandell should seek a plea bargain and forgo the self-defense theory. That approach to the case may have been sound. Gordon's incompetency, however, lay in his failure to seek formal discovery, to investigate the crime, to interview witnesses and to develop a working relationship with Crandell.

We previously stated "that the two-month delay is unusual enough within our experience to raise doubts about the lawyer's competence." *Crandell,* 25 F.3d at 755. The court's fears were realized in the evidentiary hearing, and Crandell's claims were substantiated.

At the point when Crandell requested alternative counsel, Gordon's representation, viewed in its totality, was incompetent and the state trial court should have appointed substitute counsel. Even if Gordon was justified in his belief that a plea bargain was the only alternative, his bargaining position could only have been enhanced by investigation of

guilt and penalty evidence. Gordon was also deficient in his failure to meet and develop a working relationship with his client. The magnitude of Gordon's inadequacies are multiplied by the fact that it was a capital case. To be sure, had the magistrate judge found that Crandell sabotaged the relationship or failed to make reasonable efforts to develop the relationship with his appointed counsel, then the ruling today might be different. *See Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (a criminal defendant is not entitled to a meaningful attorney-client relationship). That is not this case. The district court properly found that Gordon's representation was incompetent.

AFFIRMED AND REMANDED.