**Wayne Dale SCHELL, Petitioner–Appellant,**

v.

**Larry WITEK, Warden; Bill Lockyer, Attorney General, State of California,[1] Respondents–Appellees.**

No. 97–56197.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1999.

Decided June 25, 1999.

---

1. Bill Lockyer is substituted for his predecessor, Daniel E. Lungren, as Attorney General for the State of California. Fed. R.App. P. 43(c)(2).

Carol A. Klauschie, Pasadena, California, for the petitioner-appellant.

Steven D. Matthews, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: D.W. Nelson, Kozinski, and Trott, Circuit Judges.

## OVERVIEW

TROTT, Circuit Judge:

Wayne Dale Schell ("Schell") appeals a district court judgment adopting the findings of a magistrate judge and denying his 28 U.S.C. § 2254 habeas petition. We have jurisdiction pursuant to 28 U.S.C. § 2253.

On appeal, Schell asserts two points of error: (1) that there was insufficient evidence to find him guilty of residential burglary; and (2) that the state court violated his Sixth Amendment right to counsel by erroneously failing to consider his motion

requesting substitute counsel. Schell also asks us to remand the case to the district court for an evidentiary hearing to determine whether his trial counsel was effective. We hold that there was sufficient evidence for a reasonable jury to convict Schell of residential burglary. We also hold that the state court's failure to make a formal inquiry into the conflict between Schell and his counsel may have deprived Schell of his Sixth Amendment rights. Furthermore, failure to consult a fingerprint expert could constitute ineffective assistance of counsel in this case. We therefore remand this case to the district court for a hearing as to whether Schell received ineffective assistance of counsel. This hearing should address the nature of the conflict between Schell and his attorney and whether that conflict prejudiced Schell's defense.

## BACKGROUND[2]

On February 8, 1991, Emile Husinger's ("Husinger") apartment was burglarized. The burglar stacked two milk crates on top of each other and entered the apartment through a louvered window more than six feet off the ground. Two of the louvered window panes had been removed and were placed on a microwave in the apartment. On one of the louvered panes police discovered a fingerprint that matched one of Schell's fingerprints. Based on that fingerprint, Schell was indicted for first degree residential burglary.

A public defender was appointed to defend Schell. Two days before trial, Schell's attorney informed the court that a conflict had arisen between herself and Schell about how to prepare the defense and that Schell wanted the court to appoint substitute counsel. The trial court did not rule on this motion, presumably because Schell was not present in the courtroom. During the next two days, Schell's case was transferred to a different judge, and the motion requesting substitute counsel was never addressed. When Schell asked his attorney about the motion for substitute counsel, she told him that the motion must have been denied because she was still his attorney.

At trial, Schell was represented by the same public defender and was convicted. On appeal, Schell argued that the trial court erred in failing to hold a hearing on his motion for substitute counsel. The California Court of Appeal affirmed Schell's conviction, holding that Schell had waived or abandoned his motion for substitute counsel. Schell's petition for review with the California Supreme Court was denied.

Schell filed a petition for writ of habeas corpus in California state court. That petition was denied and the California Court of Appeal and California Supreme Court both denied his petition.

Schell then filed this petition in federal court. Based on the report of a magistrate judge, the district court denied his petition, and this appeal followed.

## STANDARD OF REVIEW

■ The district court's denial of a § 2254 habeas petition is reviewed de novo. *Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998). Because Schell filed this petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, the provisions of the Act do not apply to this case. *Jeffries v. Wood*, 114 F.3d 1484, 1493–94 (9th Cir.1997) (en banc); *accord Lindh v. Murphy*, 521 U.S. 320, 335–36, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## DISCUSSION

I. Sufficiency of the Evidence

■ Schell argues that his conviction was based on insufficient evidence and

---

**2.** We accept the factual allegations of Schell's state habeas petition insofar as they are consistent with the record because the State did not dispute those allegations. *See Bland v. California Dept. of Corrections,* 20 F.3d 1469, 1474 (9th Cir.1994).

therefore violated his due process rights. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nelson,* 137 F.3d 1094, 1103 (9th Cir.1998). In order to establish sufficient evidence, "the prosecution need not affirmatively 'rule out every hypothesis except that of guilt.'" *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion) (quoting *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Moreover, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97, 112 S.Ct. 2482 (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781).

■ To support his claim that one fingerprint was insufficient to prove he committed the crime, Schell relies on our decision in *Mikes v. Borg,* 947 F.2d 353 (9th Cir.1991). In *Mikes,* the victim was killed with a post from a disassembled turnstile that had been purchased at a hardware store four months prior to the crime. The defendant's fingerprints were discovered, among other fingerprints, on one of the posts. Those fingerprints were the only evidence linking the defendant to the crime. In addressing the defendant's claim that the fingerprint evidence alone was insufficient to support his conviction, we noted that:

> fingerprint evidence alone may under certain circumstances support a conviction. However, in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects *while committing the crime in question,* the record must contain sufficient evidence from which the trier of fact could reasonably

infer that the fingerprints were in fact impressed at that time and not at some earlier date. In order to meet this standard the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were inaccessible to the defendant prior to the time of the commission of the crime.

*Id.* at 356–57 (citations omitted). In *Mikes,* we held that the fingerprint evidence was insufficient to support a conviction, because the turnstile posts had been in a public place shortly before the crime.

The same issue was raised in *Taylor v. Stainer,* 31 F.3d 907 (9th Cir.1994). In *Taylor,* the victim was killed in her apartment. Police believed that the assailant had entered the apartment through the kitchen window. On the bottom interior edge of the windowsill, the police discovered a fingerprint that matched Taylor's. The fingerprint was the only evidence linking Taylor to the crime. We held that the fingerprint constituted sufficient evidence to support the conviction because the inside of the victim's windowsill was not a public place and unlike the turnstile posts in *Mikes,* the fingerprint on the inside of the windowsill could not have been placed there at any time except during the commission of the crime. *Id.* at 909–10.

The key distinction between *Mikes* and *Taylor* is the location of the fingerprint. In this case, the fingerprint was obtained from the interior of one of the two lower panes of a louvered window. The window was more than six feet off the ground, in a gated yard not near a public walkway. As in *Taylor,* the jury in this case could have reasonably inferred that the fingerprint was not placed on the inside of the window prior to the commission of the burglary.

In an attempt to align his case with *Mikes,* Schell argues that the louver pane is removable and replaceable, and Schell's fingerprint might have been placed on the pane before it was purchased by Husinger. This argument is unsupported by the record and fails to prove insufficient evidence.

*See Taylor,* 31 F.3d at 910 ("The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence is not sufficient to invalidate an otherwise legitimate conviction."). Moreover, Husinger testified that she washed the windows every six months and nothing in the record suggests that the pane had been purchased in the last six months. Although Schell is not required to prove how his fingerprint got on Husinger's window pane, his argument can only explain the fingerprint "through far-fetched, unsupported speculation." *See id.* at 910. Viewing these facts in the light most favorable to the State, we hold that a reasonable jury could find Schell guilty beyond a reasonable doubt.

## II. Motion for Appointment of Substitute Counsel

▇ Schell argues that the California trial court violated his Sixth Amendment right to counsel by failing to rule on his motion requesting substitute counsel. Because the denial of a motion to substitute counsel implicates the defendant's Sixth Amendment right to counsel, it is properly considered in a habeas petition. *Bland,* 20 F.3d at 1475.

### A. Waiver and Abandonment

▇ The State argues that Schell waived and abandoned this claim by failing to reassert it before the state court prior to trial. Since the motion was based on an allegedly irreconcilable conflict between Schell and his counsel, it is rooted in the Sixth Amendment, and the general rule is that " '[c]onstitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent.' " *Gete v. INS,* 121 F.3d 1285, 1293 (9th Cir.1997) (alteration in original) (quoting *Davies v. Grossmont Union High Sch. Dist.,* 930 F.2d 1390, 1394 (9th Cir.1991)); *see also Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that waiver of a constitutional

right "is ordinarily an intentional relinquishment or abandonment of a known right or privilege"). Additionally, the Supreme Court has instructed that we should make every reasonable assumption against the waiver of fundamental rights. *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

In this case, the facts do not support the State's claim of waiver. Because of a conflict in their approach to trial preparation and strategy, Schell, through his attorney, made a motion requesting substitute counsel. The state court did not address Schell's motion at that time, probably because Schell was not present. Apparently, that motion was lost in the shuffle when the case was reassigned to a different court, and the motion was never addressed. When Schell asked his counsel about the motion, his attorney told him that the motion must have been denied because she was still Schell's attorney. On these facts, Schell reasonably believed that the motion had been heard and denied.

In support of its argument, the State cites a number of cases where parties have waived arguments by failing to reassert them. *See White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.1990) (en banc) ("[K]nowing participation in a bench trial without objection is sufficient to constitute a jury waiver."); *see also United States v. Holmquist,* 36 F.3d 154, 165–66 (1st Cir.1994) (holding that a defendant waived his argument by not offering evidence that the court had ruled was inadmissible unless it was first proffered to the judge outside of the presence of the jury). These cases are distinguishable. Schell did not know that the state court had failed to address his motion, and, unlike *Holmquist,* in this case the judge did not make a tentative ruling and invite Schell to reargue it at a later time. We note that in *United States v. Taglia,* 922 F.2d 413, 416 (7th Cir.1991), the Seventh Circuit held that a defendant waived his motion to sever by failing to reassert it after the motion had been lost in the shuffle. The Seventh Circuit noted

that "[i]f a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that [a motion] has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *Id.* This case is distinguishable. There is nothing to suggest that Schell knew of the court's inadvertent error. To the contrary, Schell claims to have reasonably believed, on the basis of advice from his lawyer, that his motion had been presented and denied. On these facts, we hold that a defendant does not voluntarily, knowingly and intelligently waive a motion that he reasonably believes was denied. To hold otherwise would put too large a burden on criminal defendants.

### B. Failure to Address the Motion Requesting Substitute Counsel

■■■ After determining that Schell did not waive his motion for substitute counsel, we now address the effect of the trial court's failure to address the motion. In reviewing the constitutional import of a trial court's denial of a motion for substitute counsel, we consider three factors: "(1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *Crandell v. Bunnell,* 144 F.3d 1213, 1216 (9th Cir.1998) (internal quotation omitted).

■■■ In this case, Schell's motion requesting substitute counsel was made two days before trial. On direct review of federal district courts, we have held that motions made on the eve of trial are untimely. *See United States v. George,* 85 F.3d 1433, 1438–39 (9th Cir.1996) (holding that a motion made on the day of trial was untimely); *United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir.1992) (holding that a motion made three days before trial that would have required a continuance was untimely); *United States v. Williams,*

594 F.2d 1258, 1260–61 (9th Cir.1979) ("[W]here the request for change of counsel comes during the trial, or on the eve of trial, the Court may, in the exercise of its sound discretion, refuse to delay the trial to obtain new counsel and therefore may reject the request."). However, we have refused to allow a motion requesting substitute counsel to be denied solely because it is late. *See United States v. Lillie,* 989 F.2d 1054, 1056 (9th Cir.1993) *overruled on other grounds by United States v. Garrett,* 179 F.3d 1143, 1144 (9th Cir.1999) (en banc). Even if a motion is untimely, if it would not delay the trial or inconvenience the court or the opposing party, the fact that it is untimely will not by itself justify denying the motion. *See id.; United States v. Torres–Rodriguez,* 930 F.2d 1375, 1380–81 (9th Cir.1991) *overruled on other grounds by Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

In this case, the state court failed to determine how much time would be needed to secure new counsel, or whether new counsel would be able to proceed with the scheduled trial date. We note that the motion for substitute counsel would have almost certainly required a continuance of the trial while new counsel was appointed and allowed to prepare. However, the record does not reflect how long of a continuance would have been necessary or whether the court or the State would have been inconvenienced by the continuance. We also note that the State does not argue that Schell made the motion in bad faith or intentionally tried to delay the trial. Because the court failed to address Schell's motion, we are unable to determine whether it was untimely.

■■■ The second factor is whether the court made an adequate inquiry into the defendant's complaint. As previously explained, the trial court failed to make any inquiry into the reasons behind Schell's request for substitute counsel. No inquiry is inadequate inquiry. *See Bland,* 20 F.3d at 1476 ("[O]nce a request for substitute

counsel has occurred, inquiry is required."); *Torres–Rodriguez*, 930 F.2d at 1381 (holding that the trial court erred in failing to inquire into nature of conflict and amount of delay required in substituting counsel); *United States v. Walker*, 915 F.2d 480, 483 (9th Cir.1990) (holding the district court erred in making only a limited inquiry and failing to inquire into causes underlying defendant's dissatisfaction with his attorney).

 The final factor we look at is whether the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication preventing an adequate defense at trial. A conflict between the defendant and his attorney alone is not enough. *See Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (holding that the Sixth Amendment does not guarantee a meaningful relationship between the defendant and his counsel). Because the trial court did not make an inquiry, the record does not reflect how far the relationship between Schell and his counsel had deteriorated. However, in his briefs to this court, Schell alleges that he and his attorney disagreed over whether a fingerprint expert should be called, and whether they should accept a plea. Schell argues that his counsel told him not to speak during trial, asked him to waive time for her own purposes, and got upset with him when he asked to see an opinion letter from an independent fingerprint expert that she had purportedly obtained. The record does not suggest that Schell and his attorney did not communicate or that Schell's attorney was unprepared at trial. However, the trial court's failure to inquire into their relationship prevents us from determining whether Schell's counsel was able to learn the information she needed from Schell and whether she was able to adequately prepare.

Although Schell's motion may have been untimely and the conflict with his counsel may not have been so great that it prevented the presentation of an adequate defense, the trial court's failure to make an inquiry prevents us from determining those issues. We hold that the trial court's failure to make an inquiry into Schell's motion for substitute counsel may have deprived Schell of his Sixth Amendment rights.

## C. Harmless Error Standard or Prejudice Per Se

 Having concluded that the state court's error in failing to address Schell's motion for substitute counsel could have prejudiced his Sixth Amendment rights, we are required to determine the appropriate remedy. Schell argues that the state court's failure to address his motion requesting substitute counsel was prejudicial per se. To support this argument, Schell relies on our prior decisions in *Bland* and *Crandell*. These cases are distinguishable.

 In *Bland*, the defendant wanted appointed counsel to replace his previously retained counsel. 20 F.3d at 1474–75. The *Bland* court held that failure to allow the defendant to replace his retained counsel violated his qualified right to *choice of counsel*, which was prejudicial error per se. *Id.* at 1478. The qualified right of choice of counsel applies only to persons who can afford to retain counsel. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."); *United States v. Rewald*, 889 F.2d 836, 856 (9th Cir.1989) (recognizing that the right to choice of counsel is limited to defendants who can retain counsel); *United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir.1984) ("This court has recognized that *individuals who can*

*afford to retain counsel* have a qualified right to obtain counsel of their choice.") (emphasis added); *see also United States v. Graham,* 91 F.3d 213, 221 (D.C.Cir.1996) (" 'One of the express limitations upon the right to choose one's own attorney is that the criminal defendant be 'financially able' to retain counsel of his choice.' ") (quoting *United States v. Friedman,* 849 F.2d 1488, 1490 (D.C.Cir.1988)); *United States v. Mendoza–Salgado,* 964 F.2d 993, 1014 n. 12 (10th Cir.1992) ("A defendant's right to secure counsel of choice is cognizable only to the extent defendant can retain counsel with private funds."). In this case, Schell sought appointment of counsel to replace appointed counsel. There is no suggestion that Schell could or wanted to retain his own counsel. Consequently, the erroneous denial of the motion for substitute counsel did not implicate Schell's qualified right to counsel of his choice, and the per se prejudice rule from *Bland* is inapplicable.

▮▮▮ *Crandell* is also distinguishable.[3] In *Crandell,* the defendant sought appointed counsel to replace previously appointed counsel. 144 F.3d at 1215. However, unlike Schell, when Crandell's request was denied, he chose to defend himself rather than accept representation by the initially appointed counsel. *Id.* Forcing a defendant to defend himself is tantamount to denying the defendant his right to counsel, which is prejudicial per se. *See Gideon v. Wainwright,* 372 U.S. 335, 342–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The prejudice in *Crandell* was therefore the denial of the right to counsel and not the denial of a motion for substitute counsel. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

In this case, the issue is not Schell's right to choice of counsel or a denial of counsel. Instead, the question is whether the conflict between Schell and his attorney prevented effective assistance of counsel. *See Morris,* 461 U.S. at 13–14, 103 S.Ct. 1610 (holding that the Sixth Amendment only requires competent representation and does not guarantee a meaningful relationship between a defendant and his counsel). A defendant's Sixth Amendment right to effective assistance of counsel is violated when the defendant shows deficient performance and prejudice resulting from that performance. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. We therefore hold that this standard applies when a trial court erroneously fails to address a defendant's motion to substitute counsel. Our conclusion is consistent with our rulings in the context of direct review of federal district courts. *See George,* 85 F.3d at 1439 (noting that the defendant failed to show how the denial of his motion for substitute counsel adversely affected his defense at trial); *Castro,* 972 F.2d at 1110 (noting that defense counsel provided a good defense); *United States v. Mills,* 597 F.2d 693, 700 (9th Cir.1979) (affirming the denial of a motion to substitute counsel when the attorney presented an adequate defense). Schell argues that these cases are distinguishable because in each case the trial court conducted an adequate inquiry. However, as a constitutional matter the key question is prejudice to the defense, not the adequacy of the inquiry itself. Additionally, we note that other circuits have held that failure to make an adequate inquiry is not prejudicial per se. *See Graham,* 91 F.3d at 221 ("As the constitutional right to choice of counsel does not apply, however, Graham must show not only that the district court improperly disposed of his motions for substitute

---

**3.** Even were we to find that *Crandell* was indistinguishable, *Crandell* announced a new rule of criminal procedure after Schell's conviction became final and is therefore inapplicable to Schell's case. *See Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103

L.Ed.2d 334 (1989) (plurality) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.").

counsel, but also that the error was prejudicial to his case. . . ."); *United States v. Morrison,* 946 F.2d 484, 499–500 (7th Cir. 1991) (holding that the district court abused its discretion in failing to make an inquiry into the reasons for the motion for substitute counsel but going on to determine whether the error was harmless); *McKee v. Harris,* 649 F.2d 927, 933 (2d Cir.1981) (holding that reversal is not required when a trial court fails to make an inquiry unless the defendant can point to some harm that has resulted from a failure to make the required inquiry). We agree with these circuits and hold that a trial court's failure to make an inquiry into a defendant's request for substitute counsel is reviewed under the harmless error standard.

However, in this case we are not in a position to be able to apply the harmless error standard. As previously explained, the state court's failure to make an adequate inquiry prevents us from being able to determine whether the dispute between Schell and his attorney prevented Schell's attorney from providing constitutionally adequate representation. We therefore reverse the denial of the petition and remand this case to the district court with instructions to conduct an evidentiary hearing to determine the extent of the conflict between Schell and his attorney, whether that conflict prevented Schell's attorney from providing competent representation and if so whether Schell's trial was prejudiced by ineffective representation. We note, however, that it has been over six years since Schell's state court trial. We therefore instruct that in the event that the district court finds that because of the passage of time a hearing on this issue would be meaningless, the district court should grant the petition and award Schell a new trial.

III. Ineffective Assistance of Counsel

■ Schell also requests that this court remand this case to the district court for an evidentiary hearing to determine whether his trial counsel was effective. A defendant is entitled to an evidentiary hearing if "(1) he has alleged facts that, if proved, would entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Caro v. Calderon,* 165 F.3d 1223, 1226 (9th Cir.1999).

■ To establish a claim of ineffective assistance of counsel, Schell must prove that his counsel's representation fell below an objective standard of reasonableness and that such poor performance prejudiced the defense. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. Schell argues that his counsel only agreed to solicit the opinion of a fingerprint expert after his repeated requests that she do so and that when he asked to see the opinion from the expert his attorney stated that the opinion was unfavorable but failed to show him the letter from the expert. Schell argues that his attorney failed to solicit the help of a fingerprint expert, and that in this case where the only evidence was one fingerprint, failure to do so could constitute ineffective assistance of counsel. We agree. On the facts of this case where the only evidence connecting Schell to the crime was a single fingerprint, we believe that failure to solicit the opinion of a fingerprint expert could constitute ineffective assistance of counsel. The record does not clearly reflect, however, whether Schell's attorney in fact consulted a fingerprint expert and whether that expert gave a favorable report. Without this information, we are unable to determine whether Schell's attorney adequately prepared for and effectively represented Schell at trial. We therefore remand this issue back to the district court with instructions to conduct an evidentiary hearing to determine whether Schell's trial counsel was competent and if not, whether the attorney's deficiencies prejudiced Schell's trial. As above, if the district court determines that too much time has passed to conduct an effective evidentiary hearing, the district

court should grant the writ and award Schell a new trial.

## CONCLUSION

For the reasons explained above, we reverse the denial of the petition and remand to the district court for an evidentiary hearing to determine whether Schell received effective assistance of counsel, and in particular, whether the conflict between Schell and his attorney prejudiced Schell's trial.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

KOZINSKI, Circuit Judge, concurring:

I join Judge Trott's opinion because I agree that Schell may have been deprived of his Sixth Amendment right to counsel as a result of the state trial court's failure to rule on his motion for substitution of counsel. I write separately to point out how muddled our law in this area has become.

As a federal court of appeals, we have the power to create prophylactic rules that the district courts must follow, even when such rules are not constitutionally required. See, e.g., Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); Rand v. Rowland, 154 F.3d 952, 959 (9th Cir.1998) (en banc); United States v. Rubio–Villareal, 967 F.2d 294, 298 (9th Cir.1992) (en banc). Our relationship to the state courts is very different. We have no power to set up prophylactic rules for them, nor to review the exercise of their discretion. Instead, in a habeas case like Schell's, we may determine only whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (1994); see also Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct.

2546, 115 L.Ed.2d 640 (1991) ("The [habeas] court does not review a judgment, but the lawfulness of the petitioner's custody simpliciter."). That is the full extent of our power.

Although it may be fair to say that a state court necessarily abuses its discretion when it denies a defendant his constitutional rights, the converse isn't true: A state court may abuse its discretion without denying a defendant his constitutional rights. Yet we have equated the two by holding that we review a state trial court's refusal to allow substitute counsel for an abuse of discretion. See Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir.1994). Unsurprisingly, the authority Bland cited for this proposition is a case that came to us on direct review from a federal district court—where we do have the authority to review for abuse of discretion. However, that standard of review has no sensible application in a habeas case.[1]

Consistent with our caselaw, the majority opinion utilizes a three-part test from Bland: In order to determine whether the state court abused its discretion, we consider the timeliness of the motion, the adequacy of the inquiry into the defendant's complaint, and whether the conflict between the defendant and his attorney was so great as to prevent an adequate defense. Bland took this test from the same direct review case it cited for the abuse of discretion standard of review, United States v. Walker, 915 F.2d 480 (9th Cir.1990). Tracing the test back to its roots, we find that it was first announced in a direct review case. See United States v. Mills, 597 F.2d 693, 700 (9th Cir.1979). Only the third listed factor, whether the conflict prevented an adequate defense, is properly a question for a federal court on habeas review. Any inquiry into whether

---

1. The analytical difficulties become even greater when one realizes that the district court is required to use this standard in deciding whether to grant a petition for habeas corpus. So we have effectively instructed district courts to review state court judgments to determine if the state court abused its discretion. That, of course, they cannot do. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.").

we believe the motion was timely or the state court's inquiry into the defendant's complaint was adequate may trench upon the state courts' right to set their own procedural rules. If a defendant doesn't follow those rules, his claim may be procedurally defaulted. *See, e.g., Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). I don't see that we have the authority to tell the state courts when the rules must be followed and when they should be ignored. *See, e.g.*, maj. op. at 1100.

Because a three-judge panel cannot overrule circuit precedent, I join the majority in utilizing the *Bland* three-part test to determine whether Schell was deprived of his Sixth Amendment rights by the state court's failure to hear his motion for substitution of counsel. However, in an appropriate case, I believe that the court sitting en banc should reconsider that test.