**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 22 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OSCAR VARGAS, SR.,

Defendant - Appellant.

Nos. 01-7081 and 01-7082

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-01-03-S)**

Gloyd L. McCoy, of Coyle, McCoy & Burton, Oklahoma City, Oklahoma, for Defendant-Appellant.

Jeffrey A. Gallant, Assistant United States Attorney, Muskogee, Oklahoma (Sheldon J. Sperling, United States Attorney, with him on the brief), for Plaintiff-Appellee.

Before **SEYMOUR** , **EBEL** , and **HENRY** , Circuit Judges.

**HENRY** , Circuit Judge.

Oscar Vargas, Sr. entered a plea of guilty to one count of possession with intent to distribute marijuana. He was sentenced to 105 months of imprisonment, followed by four years of supervised release, and he received a special assessment of $100.00. In this appeal, Mr. Vargas asserts that the district court erred at the sentencing hearing when, after Mr. Vargas's lawyer informed the judge that Mr. Vargas was dissatisfied with the lawyer's services, the district court conducted insufficient inquiry before denying the attorney's motion to withdraw as counsel for Mr. Vargas. Mr. Vargas requests that we remand to the district court so that an appropriate record can be established regarding his reasons for dissatisfaction. Because we find the inquiry at the sentencing hearing to be adequate, we deny Mr. Vargas's appeal and affirm his sentence.

## I. Background

Mr. Vargas and a codefendant were charged with conspiracy to possess and distribute marijuana, in violation of 21 U.S.C. § 846, and with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Mr. Stephen J. Greubel represented Mr. Vargas as appointed counsel in this case. After the district court denied a motion to suppress, Mr. Vargas entered a plea of guilty on the latter charge.

At the sentencing hearing, Mr. Greubel rose and informed the court that Mr. Vargas appeared to be dissatisfied with Mr. Greubel's legal representation. This was the first indication on the record of any problem between Mr. Vargas and Mr. Greubel. Specifically, Mr. Greubel stated: "I am ready for sentencing, but I should advise the court that Mr. Vargas is extremely unhappy with my work in this case, and it's probably best that I move to withdraw as his counsel this morning." Rec. vol. III, at 3. The following exchange immediately ensued:

> The Court: What's the problem, Mr. Vargas?
>
> Mr. Vargas: I'm here for sentencing; ain't I?
>
> The Court: Yes.
>
> Mr. Vargas: Let's get on with it.
>
> The Court: All right. Your motion is denied. Motion denied.

Id. at 4.

The district court then resumed the hearing and sentenced Mr. Vargas to 105 months of imprisonment followed by four years of supervised release. Prior to the end of the sentencing hearing, the district court asked Mr. Vargas if he had anything to add regarding the case. Mr. Vargas replied, "No, your honor." Id. at 15. Mr. Greubel also did not revisit the matter at any point during the sentencing hearing.

## II. Discussion

The sole issue on appeal is whether the district court should have conducted a more extensive inquiry into Mr. Vargas's purported dissatisfaction with his attorney. Mr. Vargas, now represented by appointed appellate counsel, appears to partially characterize this case as an ineffective assistance of counsel claim. See Aplt's Br. at 3. If that were an accurate description, such a claim would presumptively be dismissed in this circuit. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.").[1]

---

[1] We note, however, that Mr. Vargas's decision to raise the ineffective assistance claim on direct appeal might have been an attempt to preserve the issue for habeas review. See id. at 1241 ("The threat of default and resulting procedural bar has doubtless resulted in many claims being asserted on direct appeal only to protect the record.") When a claim is defaulted, it is subject to a cause and prejudice test. See Bousley v. United States, 523 U.S. 614, 622-24 (1998). Nevertheless, because such attempts to protect the record "unnecessarily burden[] both the parties and the court with a presentation and review leading only to dismissal for reassertion in a petition under 28 U.S.C. § 2255," Galloway, 56 F.3d at 1241, we have held that the procedural bar rule of United States v. Frady, 456 U.S. 152 (1982), "does not apply to ineffective assistance of counsel claims." Id. This issue is, however, currently under review by the United States Supreme Court, Massaro v. United States, 2001 WL 1388504 (2d Cir. Nov. 2, 2001) (unpublished opinion), cert. granted, 70 U.S.L.W. 3669 (U.S. Oct. 1, 2002) (No. 01-1559).

In the alternative, Mr. Vargas also challenges the district court's denial of a motion to substitute counsel. "We review a district court's refusal to substitute counsel for an abuse of discretion." United States v. Beers, 189 F.3d 1297, 1302 (10th Cir. 1999) (internal quotation marks omitted). "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992) (internal quotation marks omitted).

Mr. Vargas argues that it was incumbent upon the district court to perform a more searching inquiry than it undertook in this case, and he suggests that the district court's failure to do so left Mr. Vargas effectively without counsel during the sentencing hearing. Mr. Vargas asks us to follow the Ninth Circuit, which has suggested that, when a defendant requests substitute counsel, "[n]o inquiry is inadequate inquiry." Schell v. Witek, 181 F.3d 1094, 1100 (9th Cir. 1999), superseded on other grounds by 218 F.3d 1017 (9th Cir. 2000) (en banc). Mr. Vargas's case, however, clearly differs from Schell, where "the trial court failed to make *any* inquiry into the reasons behind Schell's request for substitute counsel." Schell, 181 F.3d at 1100 (emphasis added). By contrast, the district court here did make *some* inquiry, in that it stopped the proceeding and directly

asked Mr. Vargas to describe the problem.  The question before us is, therefore, how much inquiry is enough.

There can be no bright lines drawn as to what constitutes "adequate" inquiry.  Generally, repeated inquiry is preferred, both in court and in serious areas of life outside of the law.  For example, when counseling a potential convert to Judaism, "[s]ome [rabbis] adhere to an ancient tradition of turning away a candidate three times to test the candidate's sincerity."  Conversion to Judaism Resource Center, *The Conversion Process*, *at* http://www.convert.org/process.htm (last visited Oct. 23, 2002). [2]  The district court in this case asked twice.  However, we need not engage in a simple counting exercise, because the quality of the inquiry is at least as important as the quantity.

Here, the district court spoke directly to Mr. Vargas, who affirmatively declined the opportunity even to address the issue.  Notably, there is no evidence that Mr. Vargas was too confused or intimidated by the legal trappings of the proceeding to speak up.  Instead, Mr. Vargas stated clearly and affirmatively that he was in court to be sentenced.  His request, "Let's get on with it," satisfied the district court that Mr. Vargas was ready to proceed.  Rec. vol. III, at 4.

---

[2]    We do not, of course, imply that the court looks to religion in assisting with our resolution of this or any other case.  We note this ancient tradition simply as one example of a situation outside of the law where important decisions are made only after repeated inquiry.

Dispelling any doubt as to his ability to speak for himself, Mr. Vargas even interjected during the proceedings to challenge a government witness's expertise regarding marijuana, asking, "Has he ever smoked it before? I don't see him being an expert, Your Honor." Rec. vol. III, at 12. Even so, the district court extinguished any lingering uncertainty that Mr. Vargas might yet wish to explain his position when it gave Mr. Vargas a final opportunity to speak. Mr. Vargas again clearly and affirmatively declined.

A district court should engage in an inquiry sufficient to explore and understand the defendant's concerns about the inadequacy of counsel. Such an inquiry might involve repeating and, if necessary, rephrasing questions; but the fundamental requirement is that the district court's inquiry uncover the nature of the defendant's concerns. This requirement exists to satisfy the law's concern that when a defendant surrenders important rights and claims, such decisions must be knowing and intelligent. This concern is pervasive in our precedents. See, e.g., Hawkins v. Mullin, 291 F.3d 658, 679 (10th Cir. 2002) (waiver of right to present mitigating evidence must be knowing and intelligent) (Lucero, J., concurring); United States v. Turner, 287 F.3d 980, 983 (10th Cir. 2002) (noting that "defendant must knowingly and intelligently relinquish the benefits of representation by counsel") (internal quotation marks omitted); Toles v. Gibson, 269 F.3d 1167, 1180 (10th Cir. 2001) (requiring knowing and intelligent waiver

of <u>Miranda</u> rights); <u>Mitchell v. Gibson</u>, 262 F.3d 1036, 1058 (10th Cir. 2001) (requiring knowing and intelligent waiver of right to counsel after a polygraph test); <u>United States v. Cockerham</u>, 237 F.3d 1179, 1189-90 (10th Cir. 2001) (requiring knowing and intelligent waiver of right to appeal and collaterally attack sentence and conviction with plea of guilty).

As the record here indicates, however, it was Mr. Vargas himself who cut off the district court's inquiry. While we still would have preferred the district court to be a bit more persistent, we need only ask whether the district court abused its discretion in undertaking the inquiry that it did, and in not substituting counsel after this inquiry. See <u>Beers</u>, 189 F.3d at 1302. We conclude on these facts that it did not, as Mr. Vargas's refusal even to respond to direct questions about the issue clearly indicated his acquiescence to his counsel's representation; further, as noted above, neither Mr. Vargas nor his counsel chose to pursue this issue when specifically given a final opportunity to do so. The abbreviated inquiry by the district court–which generally would be cause for concern–was therefore attributable to Mr. Vargas himself.

### III. Conclusion

The district court in this case did not abuse its discretion in the extent of its inquiry into Mr. Vargas's motion to substitute counsel. Mr. Vargas's appeal is

thus DENIED, and his sentence is AFFIRMED. The resolution of this case does not, of course, prejudice any ineffective assistance of counsel claims which Mr. Vargas might bring on collateral review. [3]

---

[3] See our discussion in note 1, supra, discussing the preference for bringing ineffective assistance of counsel claims on collateral review.