Roger LANGE, Petitioner–Appellant,

v.

Warren YOUNG, Superintendent, Waupun Correctional Institution, Respondent–Appellee.

No. 87–3037.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1988.

Decided Feb. 15, 1989.

Charles Bennett Vetzner, Wis. Public Defender, Madison, Wis., for petitioner-appellant.

Sally L. Wellman, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

This case is on appeal from the district court's order denying petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we affirm.

### I.

The petitioner, Roger Lange, was convicted of two counts of attempted enticement pursuant to Wis.Stat. § 944.12 (1982), and one count each of murder, kidnapping, first-degree sexual assault, and enticement of Paula McCormick, pursuant to Wis.Stat. §§ 940.01, 940.31(1)(b), 940.225(1)(d), and 944.12 (1982), respectively.

Two days after she disappeared, the body of Paula McCormick, who was not yet twelve years old, was found in a storage locker rented by Roger Lange. The police discovered Paula McCormick's body in a Zenith television box inside two plastic bags. Both of her hands were tied behind her back and her knees were tied up underneath her chin. Her blue jeans and underwear were pulled down. Two cords were tied around her neck and a washcloth was stuffed down her throat.

At trial, the government presented overwhelming evidence connecting the disappearance and death of the young girl to Lange. On the day she died, Paula told friends that she was going to make a dollar by babysitting after school for five minutes. In the weeks previous to Paula's death, Lange had made similar offers to two other young girls. After being questioned by the police, Lange admitted that Paula had been in his apartment the afternoon she died. He also brought the police to the storage locker and indicated that they would find Paula's body in the locker inside a Zenith box.

A two-tiered trial was held to determine Lange's guilt. After the first trial, the jury found him guilty of the crimes charged. Because he had pleaded not guilty by reason of mental disease or defect, a second trial was held to determine Lange's sanity. The jury found that Lange did not have a mental disease when he

killed Paula McCormick. Lange was then sentenced to life imprisonment. The Wisconsin Court of Appeals affirmed his conviction and the Wisconsin Supreme Court denied his subsequent petition for review.

Lange then brought this petition for habeas corpus review. He contends that his convictions for sexual assault and kidnapping violated his due process rights because there was insufficient evidence to support those convictions. Second, he argues that his constitutional right to present critical opinion evidence was violated by the trial court's evidentiary rulings. Third, Lange claims that his constitutional right to counsel was violated because the prosecution called as its witness a psychiatrist that defense counsel had originally retained. The district court rejected each of petitioner's arguments and denied his petition. Lange then brought this appeal.

## II.

### A.

Lange's first contention on appeal is that the government failed to present sufficient evidence to support his convictions for sexual assault and kidnapping. When the asserted entitlement to habeas corpus relief is based upon a claim of insufficient evidence, the proper inquiry for this court is to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Based upon this standard of review, we find that there was sufficient evidence to support Lange's convictions.

■ To support a conviction for sexual assault, the state must prove Lange touched an intimate part of Paula McCormick while she was alive. The physical evidence showed that Lange had anal intercourse with Paula after she died. Because there is no physical evidence of injury or penetration before she died, Lange contends that his conviction should be reversed. However, neither injury nor penetration is a required element of sexual assault. Contact with an intimate part is the only element required by law. Further, this contact need not be proven through direct physical evidence; circumstantial evidence is sufficient. *See Rowan v. Owens,* 752 F.2d 1186 (7th Cir.1984), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 691 (1986) (direct physical evidence of penetration not necessary to prove penetration); *see also Jackson,* 443 U.S. at 324–25, 99 S.Ct. at 2791–92 (circumstantial evidence sufficient to prove elements of a crime beyond a reasonable doubt).

Considering all the circumstances, we find that a reasonable jury could have found that Lange assaulted Paula McCormick before she died. First, the jury found beyond a reasonable doubt that Lange lured Paula into his apartment with the intent to commit sexual assault. (Lange was convicted of enticement and does not challenge this conviction. In order to sustain an enticement conviction, the state must prove intent to commit sexual assault.) In order to prove intent, the state demonstrated that Lange had a history of sexually assaulting young girls. Second, given the timeline presented at trial, Lange also had time to assault Paula before killing her. In addition, Paula scratched Lange's chest and hands, indicating that a struggle occurred. The fact that Lange's chest was scratched also indicates that Lange had at least partially disrobed before Paula died, negating Lange's contention that he only assaulted her after she died.

■ To support a conviction for kidnapping, the state must prove beyond a reasonable doubt that the defendant confined Paula by force. Under Wisconsin law, the confinement need not exist for any particular length of time and it may be related or incidental to the commission of other criminal acts. *See, Harris v. State,* 78 Wis.2d 357, 365–67, 254 N.W.2d 291, 296 (1977) (conviction for both abduction and sexual perversion held proper even though the former was incidental to the latter). Given the fact that Paula was bound and gagged, and that Lange had been scratched in an apparent struggle, we find that a reasonable jury could have convicted Lange of

kidnapping on the basis of the evidence presented at trial.

## B.

Lange's second contention on appeal is that two exclusionary rulings by the trial court deprived him of a fair trial. During the first trial to determine petitioner's guilt, the trial court excluded certain testimony of Dr. Bauman, a pathologist, which Lange claims negated his intent to kill Paula McCormick. During the second trial to determine petitioner's sanity, the trial court excluded certain testimony of Dr. Closs, a psychologist, which Lange claims was offered to prove that he was a paranoid schizophrenic at the time he killed Paula.

The right of a criminal defendant to present a defense is a right well established by the Constitution and includes the right to offer testimony of witnesses. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). To determine whether a constitutional violation has occurred, this court must examine whether the proffered evidence was relevant, material, and vital to the defense, and whether the exclusion of that evidence was arbitrary. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *see also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (defendant must comply with state rules of evidence and procedure but state evidentiary rules "may not be applied mechanistically to defeat the ends of justice"). In this case, however, we need not decide whether the exclusion of the above-mentioned evidence was constitutional error because any error was harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (conviction should not be reversed if constitutional error was harmless beyond a reasonable doubt); *see also United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011 (7th Cir.1988) (court delineates circumstances in which harmless error analysis is available).

Lange's first argument is that the trial court should have admitted the testimony of Dr. Bauman. Lange sought to have Dr. Bauman testify that the sexual practices in which Lange regularly engaged with his girlfriend, Tina Johnson, unintentionally could have caused the death of Paula McCormick. Lange testified that about once a month he and Johnson would "get wild." Lange would bind Johnson with ropes, stuff a rag down her throat so that she passed out, and then have anal intercourse with her. Johnson corroborated that "getting wild" was in fact part of their regular sexual fare. Because Paula was bound in a similar manner, Lange argued that he did not intend to kill her but simply intended to "get wild" with her. To this end, he sought to have Dr. Bauman testify that the conduct which caused Johnson to pass out could have caused Paula's death.

The trial court did not permit Dr. Bauman to make this statement because the testimony did not involve medical expertise and because the opinion was in response to a hypothetical which did not correspond to the evidence. The court, however, did admit all of the evidence which could lead the jury to conclude that Lange did not intend Paula's death. Bauman testified that Paula died of manual strangulation caused by someone who applied enough force to compress the young girl's larynx. He also testified that a child's larynx could be more easily compressed than an adult's larynx. Further, Dr. Bauman testified that if a person wanted to render Paula unconscious (similar to the manner in which Lange rendered Johnson unconscious) force should be applied to the carotid arteries and that Paula's carotid arteries were damaged. All the evidence which would give rise to an inference that Lange only wanted to "get wild" with his victim was presented to the jury. Defense counsel was permitted to argue this theory in his closing argument. We find that the inclusion of Bauman's single statement—that the conduct which caused Johnson to pass out *could have* caused Paula's death—would not have affected the jury's verdict; therefore if the exclusion of the statement was error, it was harmless

error.[1]

■ Lange's second evidentiary argument is that the trial court should have admitted the testimony of Dr. Closs, a director of the Complex Offender Program at Mendota Mental Health Institute (the Institute) from 1974 until 1978. Lange was a patient in the program from February 1975 until October 1976, and during this time he was diagnosed as a paranoid schizophrenic. Lange sought to have Dr. Closs testify that he was diagnosed as a paranoid schizophrenic and that he was in fact a paranoid schizophrenic during this period of time. The trial court ruled that Dr. Closs could not testify to whether Lange was in fact a schizophrenic because his opinion would be based upon the opinions of the other doctors who treated Lange during this period of time.

Again, if any constitutional violation occurred because of the trial court's ruling, we must find that the error was harmless. Lange's medical records from the Institute were given to the jury and the jury was told of the prior diagnosis. Dr. Closs was not going to testify about Lange's present mental condition, only his past. Lange presented several psychiatrists who testified about his present mental condition. Three psychiatrists testified that Lange was unable to conform his behavior to the requirements of the law and three others testified that Lange had a schizo-type personality disorder. In sum, there is no possibility that Dr. Closs's testimony could

have affected the jury's determination and thus any error that occurred was harmless.

### C.

■ Lange's final contention on appeal is that the government violated his constitutional right to counsel by calling a psychiatrist who was originally retained by defense counsel. Lange and his counsel originally consulted Dr. Fosdal in preparation for the insanity defense, but wisely decided not to retain him after Dr. Fosdal opined that Lange was not insane when he murdered Paula McCormick. During the second trial on the issue of Lange's sanity, the government called Dr. Fosdal as its own witness. The trial court permitted Dr. Fosdal to testify, ruling that the scope of the attorney-client privilege did not bar the testimony of a defense psychiatrist. Lange contends that Wisconsin's limitation on the scope of the attorney-client privilege deprived him of his Sixth Amendment right to counsel.[2] He argues that defense counsel cannot effectively assist in the presentation of an insanity defense if defense experts may be called as government witnesses. Lange contends that the fear of creating evidence for the government will chill defense counsel's investigation and preparation of an insanity defense.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court stated that the "(g)overnment violates the right to effective assistance when it interferes in certain

---

1. Dr. Bauman could not have testified that the conduct which caused Johnson to pass out *did in fact* cause McCormick's death. Such a conclusion would require evidence that Lange exerted the same amount of force *for the same* period of time upon both Johnson and McCormick. There is no evidence to support this conclusion. Further, there is evidence which negates Lange's contention that he only intended to make McCormick pass out. Dr. Bauman testified that McCormick would have been rendered unconscious within twenty seconds to a minute, but that an additional two minutes of gagging would have been required to kill her.

2. In their briefs, both parties discussed at length the application of the attorney-client privilege to this situation. As a matter of state law, the Wisconsin Court of Appeals determined that the attorney-client privilege does not extend to state-

ments made by the client to a psychiatrist or to the opinion of the psychiatrist based upon those statements, *State v. Lange*, 126 Wis.2d 513, 376 N.W.2d 868 (1985) (unpublished limited precedent opinion), and this court is bound by the state court's determination of state law. *Burrus v. Young*, 808 F.2d 578, 581 (7th Cir.1986). Even if a violation of the attorney-client privilege occurred, this violation alone would be insufficient grounds for relief. The attorney-client privilege is a creation of the common law, not the Constitution. *See, e.g., United States ex rel. Edny v. Smith*, 425 F.Supp. 1038 (E.D.N.Y. 1976), *aff'd without opinion*, 556 F.2d 556 (2d Cir.1977), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977). In order to justify habeas corpus relief, Lange must demonstrate that a constitutional violation has occurred.

ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686, 104 S.Ct. at 2063. Thus, the Court has held that direct state interference with counsel's decision-making process violates the Sixth Amendment. *See, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (bar on consultation between attorney and client during overnight recess); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed. 2d 593 (1975) (bar on defense summation at bench trial); *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (bar on direct examination of the defendant). In these cases, the Court has found that there is no justification for the state rule, *see, e.g., Herring,* 422 U.S. at 863, 95 S.Ct. at 2555, or that the asserted state interest can be achieved through less prejudicial means, *see, e.g., Geders,* 425 U.S. at 91, 96 S.Ct. at 1336. Further, prejudice has been presumed. *Washington,* 466 U.S. at 692, 104 S.Ct. at 2067. However, the Supreme Court has not considered whether state rules which indirectly *may* affect defense counsel's judgement also violate the Constitution.

■ We find that Wisconsin's limitation upon the scope of the attorney-client privilege does not violate the Sixth Amendment. Our conclusion is consistent with the three other courts of appeals which have considered this issue. *See Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.1983), *cert. denied,* 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870; 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *United States ex rel. Edny v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd without opinion,* 556 F.2d 556 (2d Cir.1977), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977). First, the state has a significant interest in presenting the testimony of a psychiatrist originally retained by the defense. Unlike a trial to determine guilt, in which the state must assemble its evidence apart from any contact with the defendant, the defendant is the sole source of evidence in a trial to determine sanity. The defendant thus has the opportunity to manipulate the information the state receives. The state's ability to call a defense psychiatrist equalizes the advantage reaped by a defendant who asserts the insanity defense. Wisconsin must also face the economic consequences of inaccurate fact-finding. Under Wisconsin law, the insanity trial "is not determinative of guilt in the sense of criminal conduct but only determinative of the disposition of the defendant in terms of the treatment to be afforded one who was insane at the time the guilty conduct was performed." *State v. Koput,* 142 Wis.2d 370, 388, 418 N.W.2d 804, 812 (1988). Because of the limited resources allocated to the treatment of the mentally ill, the state has an interest in ensuring that only those who truly need treatment receive it.

We also find that Lange has greatly exaggerated the prejudice encountered by a defendant because of the limited scope of the Wisconsin privilege. Under Wisconsin law, a defendant cannot offer psychiatric evidence of insanity unless he first submits to an examination by the government's experts. Wis.Stat. § 971.16(1) (1982). Thus the possibility that the defendant might "create" evidence for the government is a risk that the defendant must accept in order to pose the defense. Whether this risk is created by the government or defense psychiatrist's examination of the defendant, its prejudicial effect is slight given the procedural protections of Wisconsin law. Issues of guilt and sanity are tried separately. Wis.Stat. § 971.17 (1982). Further, statements made by a defendant in the course of a psychiatric examination cannot be admitted as evidence against him in a criminal proceeding, except on the issue of his mental condition. Wis.Stat. § 971.18 (1982). That defense counsel's efforts will be "chilled" because a defense psychiatrist may be called by the government is, quite simply, difficult to believe.

Lange's claim, that defense counsel will be deterred in its preparation of the insanity defense because of the limited scope of Wisconsin's attorney-client privilege, is purely speculative. When the United States Supreme Court has invalidated state

rules limiting the efforts of counsel, these rules have directly and severely restricted counsel's ability to represent a defendant. Unlike these rules, Wisconsin's limited attorney-client privilege is simply another variable that defense counsel must include in its calculus of a trial strategy. For these reasons, we find that the Sixth Amendment is not violated by the limited scope of Wisconsin's attorney-client privilege.

We do find one potential problem arising from this situation. We are concerned that a jury might be unduly prejudiced if it is told that the psychiatrist was originally employed by defense counsel. Thus, reference to this fact should be, and in Lange's case was, excluded.

Because Lange has failed to demonstrate a basis upon which habeas corpus relief may be granted, the decision of the district court is

AFFIRMED.