**William J. PAWLYK, Petitioner–Appellant,**

v.

**Tana WOOD, Respondent–Appellee.**

No. 98–35026.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1999

Filed Jan. 19, 2001

Amended May 2, 2001

---

Michael Filipovic, Assistant Federal Public Defender; Jeff Ellis, Seattle King County Public Defender Assoc., Seattle, Washington, for the petitioner-appellant.

Thomas J. Young, Assistant Attorney General, Olympia, Washington, for the respondent-appellee.

Before: CANBY and GRABER, Circuit Judges, and GEORGE,[1] District Judge.

Opinion by Judge GEORGE; Dissent by Judge CANBY

· ORDER AND AMENDED OPINION

GEORGE, District Judge:

## ORDER

The Opinion and Dissent filed January 19, 2001, slip op. 827, and appearing at 237 F.3d 1054, are amended as follows:

1. At slip op. 831, line 2: delete "at state expense"; second paragraph, line 7: change "at state expense" to "at the defendant's expense"; replace the third paragraph with the following:

> Several months later, the defense retained Dr. Emanuel Tanay at the defendant's expense. Dr. Tanay conducted videotaped interviews of Pawlyk and reviewed the materials discovered from the prosecution and the reports of defense interviews with witnesses. Dr. Harris' report was not furnished to Dr. Tanay. When Pawlyk exhausted personal funds, counsel requested and was granted public funds to continue securing Dr. Tanay's psychiatric assistance. The defense listed Dr.

1. The Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

Tanay as a defense witness when it provided the required notice that Pawlyk would assert an insanity defense. *See* Wash. Rev.Code § 10.77.030; Wash. Cr. R. 4.2(c).

2. At slip op. 834, line 5: change "indigent defendants" to "all defendants"; line 7, after "building of an effective defense," insert the following footnote:

> The development of the right of access to a psychiatrist has largely occurred within the context of whether the government has violated the right of an indigent defendant. We note, however, that all defendants enjoy a constitutional right of access to a psychiatrist, regardless of wealth or indigence. We are called upon to decide whether the State violated Pawlyk's rights by unconstitutionally interfering with either his or his counsel's ability to access the assistance of a psychiatrist. Accordingly, though we rely upon cases involving indigent defendants, we do so because they are relevant to the proper resolution of the question whether the State violated Pawlyk's constitutional rights, not because Pawlyk eventually relied upon the State to pay the expenses of the second psychiatrist whom he retained.

3. At slip op. 839, first full paragraph, line 2: insert "the" before "assistance."

4. At slip op. 840, second full paragraph, line 2: change "an appointed psychiatrist" to "a psychiatrist"; line 9: delete "at state expense"; lines 9–12: change sentence to: "In granting Pawlyk funds to continue securing the services of Dr. Tanay after his initial evaluation, the court did not impose any limitations upon the evaluations of either Dr. Harris or Dr. Tanay."

5. At slip op. 841, line 9: change "neither violated due process" to "did not violate due process"; lines 10–12: delete "nor required Washington to provide funds to Pawlyk to retain a second psychiatrist. Nevertheless, Pawlyk requested and was granted funds to retain a second psychiatrist."

6. At slip op. 841, second full paragraph, first sentence: change to "In granting Pawlyk's request for funds to continue to retain Dr. Tanay, Washington met Pawlyk's basic right to receive the assistance of a psychiatrist to aid in the determination of the viability of defenses."

7. At slip op. 842, line 1: insert "State trial" before "court's orders that"; line 2: insert "to continue" between "funds" and "to retain" and delete "either Dr. Harris or";

8. At slip op. 842, first full paragraph, replace the last two sentences with the following:

> The argument, however, is brought into doubt by the limitation, set forth in *Ake*, that a defendant has a constitutional right to obtain the assistance of only a single, independent psychiatrist. Given that a state does not violate due process by denying an indigent defendant funds to access a second psychiatrist, a state action that has the effect of inhibiting defense counsel from seeking the assistance of a second psychiatrist does not necessarily violate the due process right to the assistance of a psychiatrist.

9. At slip op. 842, last paragraph, line 1: change "also" to "then".

10. At slip op. 844, lines 6–9: delete "Pawlyk's right to have the assistance of Dr. Harris, before Pawlyk ceased seeking Dr. Harris' assistance, and could obtain the assistance of Dr. Tanay

throughout the litigation" and replace with "defense counsel's ability to make independent decisions regarding the conduct of the defense"; insert the following new paragraph before the first full paragraph:

> Our answer does not depend upon whether a criminal defendant is wealthy or indigent. The result is the same whether the psychiatrist or psychiatrists are paid at state or personal expense. Whether a defendant is indigent or wealthy, *Estelle* and *Buchanan* established, and placed counsel on notice, that when a defendant places his mental status at issue and presents favorable evidence from a psychiatric evaluation, he waives confidentiality as to evaluations unfavorable to his defense.

11. At slip op. 844, insert the following new paragraph after the first full paragraph:

> Our result also comports with the decisions of other circuits. *See, e.g., Lange v. Young,* 869 F.2d 1008, 1013 (7th Cir.1989); *Noggle v. Marshall,* 706 F.2d 1408, 1414 (6th Cir. 1983); *Granviel, supra; Edney; supra.* In each of these cases, the courts have acknowledged that a defendant's rights are not violated by the prosecution's offer into evidence, in rebuttal to a mental status defense, of unfavorable psychiatric evidence resulting from the defendant's investigation of the viability of that defense.

Dissent, slip op. at 845, is amended as follows:

12. At slip op. 845, first paragraph, line 6: delete "made available by the State" and replace with "retained"; footnote 1, last two lines: delete ", with public funds,".

13. At slip op. 848, first full paragraph, line 2: change "counsel selected" to "counsel retained."

14. At slip op. 848, last carryover paragraph, first three sentence, change to:

> The majority opinion emphasizes that the Constitution requires only one defense psychiatrist to be appointed at state expense, *see Ake,* 470 U.S. at 79, 105 S.Ct. 1087, and that, if Dr. Harris alone had been so appointed, Pawlyk might well have been forced to introduce Dr. Harris's testimony or abandon his insanity defense. That argument assumes that Pawlyk's insanity defense could not have been based on other evidence, a point that has never been explored. In any event, the majority's hypothetical misses the point.

15. At slip op. 849, footnote 4, line 4: insert "of" before "reports."

16. At slip op. 851, line 6: change "chosen to help" to "retained to help"; second full paragraph, line 5: change "selected to aid" to "retained to aid."

With these amendments, Judges Graber and George have voted to deny the petition for rehearing. Judge Graber has voted to deny the petition for rehearing en banc, and Judge George has so recommended. Judge Canby has voted to grant the petition for rehearing and has recommended granting the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc. The en banc request failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration.

The petition for rehearing and petition for rehearing en banc are DENIED.

## OPINION

■ Washington state prisoner William J. Pawlyk appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his 1991 convictions for two counts of aggravated murder in the first degree.[2]

Following his arrest, Pawlyk retained and was examined first by one and then by a second psychiatrist. When Pawlyk asserted an insanity defense, he identified only one of the psychiatrists as a defense witness. Pawlyk argues that his constitutional rights to counsel and due process were violated when the state compelled the disclosure, to the prosecution and jury, of the evaluation performed by the psychiatrist whom he had not identified as a witness. We conclude that Pawlyk's rights were not violated.[3]

## Background and Procedural History

Pawlyk stabbed and killed Larry Sturholm and Debra Sweiger on July 31, 1989. Pawlyk attempted suicide on the scene, but police secured medical assistance and he recovered. The State of Washington charged Pawlyk with two counts of aggravated first-degree murder, potentially capital offenses. One week after the arraignment, defense counsel retained Dr. G. Christian Harris at the defendant's expense. Dr. Harris interviewed Pawlyk at the county jail some eleven days after the stabbings and reported his findings to the defense.

Several months later, the defense retained Dr. Emanuel Tanay at the defendant's expense. Dr. Tanay conducted videotaped interviews of Pawlyk and reviewed the materials discovered from the prosecution and the reports of defense interviews with witnesses. Dr. Harris' report was not furnished to Dr. Tanay. When Pawlyk exhausted personal funds, counsel requested and was granted public funds to continue securing Dr. Tanay's psychiatric assistance. The defense listed Dr. Tanay as a defense witness when it provided the required notice that Pawlyk would assert an insanity defense. *See* Wash. Rev.Code § 10.77.030; Wash. Cr. R. 4.2(c).

Meanwhile, the King County Prosecutor elected not to seek the death penalty. In response to Pawlyk's notice of an insanity defense, the State moved to discover the results of any and all psychological tests performed on the defendant by anyone and for copies of all court orders appointing experts to examine the defendant at public expense. The State also served Dr. Harris with a subpoena to testify and a subpoena duces tecum for his reports. The defense moved to quash the subpoenas.

The Washington trial court denied the motions to quash and granted the State's discovery request, but did not allow discovery as to "any written letters between defense counsel and Dr. Harris, and Dr. Harris shall not be interviewed concerning any communications between Dr. Harris

---

**2.** Pawlyk's notice of appeal was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A certificate of appealability is therefore required for consideration of the issues he raises on appeal. *See Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). We treat Pawlyk's notice of appeal as an application for a certificate of appealability, *see id.; Schell v. Witek,* 218 F.3d 1017, 1021 n. 4 (9th Cir.2000) (en banc),

and grant the certificate with regard to the issues raised by Pawlyk on this appeal, concluding that with regard to those issues he has made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2).

**3.** We have considered all of Pawlyk's arguments and conclude that the ones not discussed in this opinion are unpersuasive.

and defense counsel." The order directed that the "State shall have access to the discovery materials ... [Dr. Harris] used in order to form the basis for his opinion." The trial court ordered that "all information provided to the State pursuant to this order be utilized at trial only in the event that expert testimony of a psychiatrist is admitted before the jury in support of the insanity defense at trial."

Pawlyk filed a motion for discretionary, interlocutory review of the discovery order. The motion was granted by the Washington Court of Appeals and the case was transferred to the Washington Supreme Court. Relying heavily on its decision in *State v. Bonds*, 98 Wash.2d 1, 653 P.2d 1024 (1982), the Washington Supreme Court affirmed the trial court's discovery order and remanded the case for trial. *State v. Pawlyk*, 115 Wash.2d 457, 800 P.2d 338, 342 (1990).

At the trial, Dr. Tanay testified for the defense that Pawlyk had committed the stabbings while undergoing a psychotic episode, during which he was unable to distinguish right from wrong. The prosecution called Dr. Harris, who testified that he had examined Pawlyk at the request of the defense. Dr. Harris testified that, at the time of the killings, Pawlyk understood the nature of his acts and was able to tell right from wrong. The State also called Dr. David Dunner, who had not examined Pawlyk, but who testified, on the basis of a review of the videotapes of Dr. Tanay's interviews and of other materials, that Pawlyk suffered from no mental disease and could understand the nature and quali-

ty of his actions on the date of the stabbings. In final argument, the prosecutor pointed out that, ninety percent of the time, Dr. Harris is hired by the defense and "he looked hard for evidence of some kind of mental illness that would yield the result of insanity. Dr. Harris looked hard, that's why he went there, and he found nothing."

The case was submitted to the jury with only three issues contested: (1) insanity; (2) premeditation; and (3) whether the two killings were part of a common scheme or plan, making them "aggravated" murders. Pawlyk was convicted of both counts of aggravated first-degree murder and was sentenced to imprisonment for his natural life. The Washington Court of Appeals affirmed, and the Washington Supreme Court denied his petition for discretionary review.

On April 22, 1996, Pawlyk filed a petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254.[4] The State moved for summary judgment, and the district court granted the motion and dismissed the petition. Pawlyk now appeals. We review de novo the district court's denial of the petition, *see Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998), and affirm.

## Discussion

We begin by looking to the principles and purposes underlying the right to the assistance of a psychiatrist, as that right was secured by the Supreme Court.[5]

---

4. Because Pawlyk filed his petition before the effective date of the AEDPA, the provisions of that Act requiring higher standards of deference to the State courts' decisions do not apply to Pawlyk's petition or appeal. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

5. The State did not argue in district court or in its brief on appeal that a disposition in favor of Pawlyk would constitute an impermissible application of a "new rule" in violation of *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The State belatedly attempted, however, to raise the issue before argument by submitting a

A criminal defendant's constitutional right to the assistance of a psychiatrist arises from the concept of due process, and is founded upon the principle that due process guarantees fundamental fairness. *See Ake v. Oklahoma,* 470 U.S. 68, 76, 87 n. 13, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).[6] As applied to all defendants, fundamental fairness ensures that they have "access to the raw materials integral to the building of an effective defense."[7] *Id.* at 77. As noted by the Supreme Court, this principle of fairness is implemented by "identifying the 'basic tools of an adequate defense or appeal'" and "requir[ing] that such tools be provided to those defendants who cannot afford to pay for them." *Id.* (quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)).

Determinative of the scope and nature of the right to the assistance of a psychiatrist are the basic functions that psychiatrists may be called upon to perform in a prosecution that places the sanity or mental status of a defendant at issue. As noted by the Supreme Court,

> psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question. They know the probative questions to ask of the opposing party's psychiatrists and how to interpret their answers.

*Id.* at 80, 105 S.Ct. 1087. From this observation of the essential functions that a psychiatrist might be called upon to perform in litigation, the Supreme Court drew its

> conclusion that, without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high. With such assistance, the defen-

---

supplemental citation, pursuant to Federal Rule of Appellate Procedure 28(j), of *Smith v. Moore,* 137 F.3d 808, 820 (4th Cir.1998) (invoking *Teague* ). That is too late; the issue is waived. *See, e.g., Crandell v. Bunnell,* 144 F.3d 1213, 1215 n. 2 (9th Cir.1998); *Duckett v. Godinez,* 67 F.3d 734, 746 n. 6 (9th Cir. 1995).

**6.** Although Pawlyk generally ascribes the right to assistance of a psychiatrist as a Sixth Amendment right and tool, the Supreme Court's opinion in *Ake* establishes that the right derives from the due process guarantee of fundamental fairness. Having concluded that the defendant had and was denied his due process right to a psychiatrist's assistance, the Supreme Court found it unnecessary to consider application of the Sixth Amendment. *Id.* at 87, 105 S.Ct. 1087. Our decision in *Smith v. McCormick,* 914 F.2d 1153, 1158–59 (9th Cir.1990), upon which

Pawlyk relies, derived from *Ake* and similarly relied upon a due process analysis.

**7.** The development of the right of access to a psychiatrist has largely occurred within the context of whether the government has violated the right of an indigent defendant. We note, however, that all defendants enjoy a constitutional right of access to a psychiatrist, regardless of wealth or indigence. We are called upon to decide whether the State violated Pawlyk's rights by unconstitutionally interfering with either his or his counsel's ability to access the assistance of a psychiatrist. Accordingly, though we rely upon cases involving indigent defendants, we do so because they are relevant to the proper resolution of the question whether the State violated Pawlyk's constitutional rights, not because Pawlyk eventually relied upon the State to pay the expenses of the second psychiatrist whom he retained.

dant is fairly able to present at least enough information to the jury, in a meaningful manner, as to permit it to make a sensible determination.

*Id.* at 82, 105 S.Ct. 1087. Accordingly, an indigent defendant must be provided with "a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. 1087.

■ While ensuring that defendants have a right to the assistance of psychiatrists, the Supreme Court has expressly identified limitations to that right. Perhaps the most significant limitation is that a state is required to ensure to a defendant only the "provision of one competent psychiatrist." *Id.* at 79, 105 S.Ct. 1087. Further, indigent defendants do not have "a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.* at 83, 105 S.Ct. 1087. Rather, "due process requires that the State provide the defendant with the assistance of an independent psychiatrist." *Tuggle v. Netherland,* 516 U.S. 10, 12, 116 S.Ct. 283, 133 L.Ed.2d 251 (1995).

The limitation to a single, independent psychiatrist is critical given that "[p]sychiatry is not ... an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, [and] on cure and treatment." *Ake,* 470 U.S. at 80, 105 S.Ct. 1087. As we have previously noted, "*Ake* does not guarantee access to a psychiatrist 'who will reach only biased or favorable conclusions.'" *Harris v. Vasquez,* 949 F.2d 1497, 1516–17 (9th Cir.1990) (quoting *Granviel v. Lynaugh,* 881 F.2d 185, 192 (5th Cir.1989)); *see also Henderson v. Dugger,* 925 F.2d 1309, 1316 & n. 23 (11th Cir.1991) (rejecting the notion that either *Ake* or the due process clause requires the appointment of an ex-

pert who would reach a conclusion favorable to the defendant). As suggested by the Fourth Circuit, "the decision in *Ake* reflects primarily a concern with ensuring a defendant access to a psychiatrist or psychologist, not with guaranteeing a particular substantive result." *Wilson v. Greene,* 155 F.3d 396, 401 (4th Cir.1998); *accord Harris,* 949 F.2d at 1516 ("Under *Ake,* the state must provide an indigent defendant with *access* to psychiatric assistance at the guilt phase of a trial ...." (emphasis in original)).

That due process guarantees a defendant access to a single, competent psychiatrist, but does not guarantee a favorable evaluation, leads inexorably to the conclusion that a psychiatrist's evaluation or opinion may have an adverse, but constitutionally permissible, effect on particular mental status defenses that a defendant might wish to present.

If the only psychiatrist provided makes an evaluation which is damaging for a particular defense, an indigent, unlike a wealthy defendant, lacks the financial capacity to retain other psychiatrists. Competent counsel would want to refrain from introducing harmful testimony to the factfinder, but could still ask the court-appointed psychiatrist to consider other lines of analysis and to help prepare other forms of defense. Counsel might restrict the use of the psychiatrist to assistance in refuting other evidence bearing on mental capacity; or might choose not to present testimony on certain forms of mental impairment at all.

*Smith v. McCormick,* 914 F.2d 1153, 1159 (9th Cir.1990).

■ Although the Supreme Court recognized that a function of psychiatrists is to testify, in exercising the right to access the appointed psychiatrist's testimony, the indigent defendant must consider whether

the testimony will be harmful or helpful in light of the psychiatrist's evaluation. Due process is not violated when the appointed psychiatrist's testimony will be harmful to the defendant, because due process requires only that the appointed psychiatrist be *available* to the defendant to offer his testimony. Just as due process does not guarantee a favorable evaluation, due process does not guarantee that the appointed psychiatrist's testimony will be favorable. Further, as the defendant lacks the right to the appointment of a second psychiatrist, the defendant's recourse in such situations may be to refrain from asserting defenses that will result in the introduction of harmful testimony from the psychiatrist to the fact-finder.

■ Similarly, psychiatrists also provide aid "in determining whether a defense based on mental condition is warranted by the defendant's particular circumstances." *United States v. Fazzini*, 871 F.2d 635, 637 (7th Cir.1989). In exercising the opportunity to consult with the appointed psychiatrist, a defendant must consider and take into account the psychiatrist's evaluation. As we recognized in *Smith*, if the psychiatrist's evaluation is unfavorable, a permissible result may be "to decide, with the psychiatrist's assistance, not to present to the court particular claims of mental impairment." 914 F.2d at 1157. That the appointed psychiatrist may be of the opinion that a particular defense is not viable does not violate due process. The right of the defendant is to have access to the psychiatrist's opinion, rather than to have access to a favorable opinion. Significantly, given the defendant's limited right to access a single psychiatrist, he lacks the right to appointment of a *second* psychiatrist when the originally appointed psychiatrist advises against the viability of a particular defense.

■ While the defendant has a due process right to the assistance of an independent psychiatrist, *Tuggle*, 516 U.S. at 12, 116 S.Ct. 283, evaluation "by a 'neutral' court psychiatrist does not satisfy due process." *Smith*, 914 F.2d at 1158–59. By "neutral" we meant in *Smith* a psychiatrist that was not merely court-appointed, but who was required to disclose his evaluation to the court sitting as fact-finder. Further, in *Smith*, the trial court rather than the defendant determined the scope of the psychiatrist's duties. In so doing, the trial court denied the defendant access to the psychiatrist to perform the core functions for which a psychiatrist must be made available to the defendant. First, as the trial court determined the scope of the psychiatrist's evaluation, the defendant was precluded from obtaining the assistance of the psychiatrist in evaluating other mental status issues. Second, the defendant and his counsel were denied any opportunity to discuss the viability of particular defenses with the appointed psychiatrist in light of his evaluation. Indeed, the disclosure of the neutral psychiatrist's report to the court precluded the defense from deciding whether particular claims, along with the underlying evidence, should be presented to the fact-finder. Third, the duties of the neutral psychiatrist, as defined by the trial court, did not include assistance to the defendant in preparing a defense. Fourth, the defendant was deprived of the aid of the appointed psychiatrist in rebutting the state's evidence. The defendant did not have the benefit of a psychiatrist to assist in interpreting the neutral psychiatrist's evaluation, or preparing an examination of the neutral psychiatrist, or providing testimony if appropriate. To the defendant, the result of the appointment of the "neutral psychiatrist" was not the constitutionally mandated access to a psychiatrist. Rather, the functional consequence was to

limit the defendant to receiving the report of the psychiatrist, a report that was also disclosed to the ultimate fact-finder, while precluding the defendant from receiving the assistance of a psychiatrist in interpreting or acting upon the report.

With the underlying principle of fundamental fairness and the scope of the right to the assistance of a single, competent psychiatrist in mind, we turn to other guidance that the Supreme Court has provided regarding constitutional issues surrounding mental status defenses. We note that, in *Ake,* the Supreme Court relied upon the principle of fundamental fairness to assure that the defendant could, if appropriate, obtain and present evidence to the jury relevant to the issue of sanity. In the present matter, however, Pawlyk seeks to interpret the right to the assistance of a psychiatrist to facilitate withholding evidence from the jury relevant to the insanity defense he placed at issue. Rather than enabling "the jury to make its most accurate determination of the truth on the issue before them," *Ake,* 470 U.S. at 81, 105 S.Ct. 1087, Pawlyk requests a resolution that would increase the risk that the jury will reach an inaccurate determination of insanity issues. This increased risk of an inaccurate decision, although not determinative of the issue now before us, is a factor that counsels against a holding that the disclosure of Dr. Harris' evaluation violated the due process guarantee of fundamental fairness.

■ The Supreme Court has also recognized that a defendant who asserts a mental status defense lacks a Fifth Amendment right to remain silent regarding the mental status that he has placed at issue. *See Buchanan v. Kentucky,* 483 U.S. 402, 422–23, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); *Estelle v. Smith,* 451 U.S. 454, 465, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Given the nature of an insanity defense, a defendant's communication to a psychiatrist regarding his mental status is often the only meaningful evidence available to either the prosecution or the defendant regarding the defendant's mental state. A defendant by "his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Estelle,* 451 U.S. at 465, 101 S.Ct. 1866. Thus, "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan,* 483 U.S. at 422–23, 107 S.Ct. 2906.

■ Further, *Buchanan* and *Estelle* establish that the Sixth Amendment is not violated by the introduction of evidence regarding a psychiatrist's evaluation requested by the defendant. As in *Buchanan,* when counsel requests a psychiatric examination "[i]t can be assumed-and there are no allegations to the contrary-that defense counsel consulted with petitioner about the nature of this examination." *Id.* at 424, 107 S.Ct. 2906. At the time counsel requested Dr. Harris to examine Pawlyk, both *Estelle* and *Buchanan* certainly placed counsel on notice that the evaluation could be used by prosecution in rebuttal to a mental status defense. *Estelle,* 451 U.S. at 465, 101 S.Ct. 1866; *Buchanan,* 483 U.S. at 425, 107 S.Ct. 2906.

■ In the present matter, we cannot conclude that the State violated Pawlyk's right of access to a psychiatrist by compelling the disclosure of Dr. Harris' evaluation. The disclosure of Dr. Harris' evaluation did not preclude Pawlyk from having an independent psychiatrist perform an evaluation, the scope and nature of which was determined solely by the defense. Indeed, although not required by *Ake,* Pawlyk had the benefit of obtaining two sepa-

rate evaluations from two independent psychiatrists. In granting Pawlyk funds to continue securing the services of Dr. Tanay after his initial evaluation, the court did not impose any limitations upon the evaluations of either Dr. Harris or Dr. Tanay. The ability to determine the scope and nature of the evaluations remained with Pawlyk and his counsel. In addition, at the time Pawlyk retained and was evaluated by Dr. Tanay, he continued to enjoy the right to decide whether to assert any defense that would require the disclosure of the evaluations of the psychiatrists.

■ The record also establishes that the State did not infringe upon Pawlyk's ability to gain access to a psychiatrist for assistance in determining the viability of mental status defenses by the subsequent compelled disclosure of Dr. Harris' evaluation. Pawlyk had the opportunity to consult with two independent psychiatrists regarding potential defenses. Although Dr. Harris may have held an adverse opinion regarding the viability of the insanity defense preferred and ultimately presented by Pawlyk, this did not violate due process. Further, in compelling the disclosure of Dr. Harris' evaluation after Pawlyk's assertion of an insanity defense, the court expressly excluded the disclosure of any communications between defense counsel and Dr. Harris. Thus, Pawlyk enjoyed both a full right to discuss the viability of particular defenses with Dr. Harris, and continued to enjoy the full confidentiality of all communications between Dr. Harris and defense counsel regarding the viability of defenses even after asserting an insanity defense. The compelled disclosure regarded only Dr. Harris' evaluation of Pawlyk, resulting from the communication between Pawlyk and Dr. Harris.

In granting Pawlyk's request for funds to continue to retain Dr. Tanay, Washington met Pawlyk's basic right to receive the assistance of a psychiatrist to aid in the determination of the viability of defenses. In discussing particular defenses with Dr. Tanay, Pawlyk's counsel had the benefit of having received an opposing viewpoint from another psychiatrist, notwithstanding that this benefit is not guaranteed by the due process right to the assistance of a psychiatrist.

We recognized in *Smith* that, "[t]o impose such a condition as full disclosure takes away the efficacy" of the basic tool of access to a single, competent psychiatrist. 914 F.2d at 1159. Pawlyk does not identify, in the record, any part of the State trial court's orders that can be construed as imposing, as a condition of the State's granting of funds to continue to retain Dr. Tanay, a condition of full disclosure of Dr. Harris' evaluation. Further, the compelled disclosure of Dr. Harris' evaluation was not tantamount to appointing a psychiatrist upon a condition of full disclosure, but was the consequence of Pawlyk's later decision to assert an insanity defense. As noted, the Supreme Court instructs in *Buchanan* both that a defendant's assertion of an insanity defense waives his right to remain silent regarding his mental state and that the prosecution can compel disclosure of a defense-requested psychiatric examination.

■ We also cannot conclude that the compelled disclosure of Dr. Harris' evaluation impermissibly diminished the efficacy of Pawlyk's use of the basic tool of access to a psychiatrist. Pawlyk argues that the compelled disclosure of a former defense-retained psychiatrist, when another defense-retained psychiatrist testifies, impermissibly interferes with an attorney's ability to make independent decisions. An attorney, Pawlyk suggests, will be discouraged from procuring psychiatrists with contrasting views if one of the psychia-

trists can be compelled to testify for the prosecution. The argument, however, is brought into doubt by the limitation, set forth in *Ake*, that a defendant has a constitutional right to obtain the assistance of only a single, independent psychiatrist. Given that a state does not violate due process by denying an indigent defendant funds to access a second psychiatrist, a state action that has the effect of inhibiting defense counsel from seeking the assistance of a second psychiatrist does not necessarily violate the due process right to the assistance of a psychiatrist.

Pawlyk's argument is then foreclosed by *Buchanan*, in which the Supreme Court upheld the prosecutor's disclosure to the jury of a report of a defense-requested [8] examination, even though the examination was not requested for the purpose of establishing a mental status defense. The Court held that, after its decision in *Estelle*, defense counsel must anticipate that the prosecution can disclose to the jury the reports of psychiatric examinations requested by the defendant in rebuttal to a mental status defense. *Buchanan*, 483 U.S. at 425, 107 S.Ct. 2906. By footnote, the Supreme Court recognized that, when a defendant does not place his mental status at issue, he could request a competency examination and exercise his right to remain silent regarding his mental status by submitting to the examination on condition that the results would be applied solely for the purpose of determining competency. *Id.* at 425, n. 21, 107 S.Ct. 2906. Nevertheless, when "a defendant places his mental status at issue and thus relies upon reports of psychological examinations, he should expect that the results of such reports may be used by the prosecutor in rebuttal." *Id.* Similar to the present

matter, the defendant in *Buchanan* submitted some psychological reports to the jury to support his mental status defense, but did not submit the report that the Supreme Court held the prosecution could place before the jury in rebuttal. That counsel for Pawlyk requested Dr. Harris' examination to evaluate the viability of the insanity defense that he subsequently presented to the jury reinforces the conclusion that he would have to anticipate its possible use by the prosecutor in rebuttal.

As Dr. Harris' evaluation was not disclosed until after Pawlyk's assertion of his insanity defense, the compelled disclosure could not have inhibited his counsel in consulting two psychiatrists and obtaining their advice regarding the viability of particular mental status defenses. Counsel was required to anticipate, at the time it requested Dr. Harris' evaluation, that the prosecution might be able to disclose Dr. Harris' evaluation in rebuttal to an insanity defense. The compelled disclosure did not limit or impinge the efficacy of Pawlyk's access to a psychiatrist to assist in the preparation of trial, or the presentation of evidence, or the rebuttal of a government witness. Dr. Tanay not only remained available to Pawlyk, but Pawlyk exercised his right and used Dr. Tanay to perform these functions. We recognize that the disclosure of Dr. Harris' evaluation and his testimony in rebuttal weakened Pawlyk's insanity defense, but the strength of the facts regarding Pawlyk's mental status is not at issue. At issue is whether the State unconstitutionally infringed upon defense counsel's ability to make independent decisions regarding the

8. We disagree with Pawlyk's suggestion that *Buchanan* is distinguishable because the prosecutor also requested the examination, and thus had received a copy of the report. The

critical issue in *Buchanan,* as in *Smith* and the present case, was the disclosure to the ultimate fact-finder of a psychiatric report requested by the defendant.

conduct of the defense. We conclude that the answer is "no."

■ Our answer does not depend upon whether a criminal defendant is wealthy or indigent. The result is the same whether the psychiatrist or psychiatrists are paid at state or personal expense. Whether a defendant is indigent or wealthy, *Estelle* and *Buchanan* established, and placed counsel on notice, that when a defendant places his mental status at issue and presents favorable evidence from a psychiatric evaluation, he waives confidentiality as to evaluations unfavorable to his defense.

■ Pawlyk also argues that the disclosure of Dr. Harris' evaluation violated our statement in *Smith* that "a defendant's communication with her psychiatrist is protected up to the point of testimonial use of that communication." 914 F.2d at 1160. Again, the argument ignores the limitation created in *Ake*, and fundamental to our decision in *Smith*, that a defendant has the right to only a single, independent psychiatrist. Even in making our statement in *Smith*, we signaled that it did not govern a defendant's communications regarding his mental status to a formerly retained psychiatrist, such as Dr. Harris, by citing *United States ex rel Edney v. Smith*, 425 F.Supp. 1038, 1054–55 (E.D.N.Y.1976), *aff'd*, 556 F.2d 556 (2d Cir.1977) (table). As we noted parenthetically, in *Edney* the "defendant waived protection against prosecution's use in rebuttal of one-time defense expert when defendant introduced testimony on mental state from different expert." *Smith*, 914 F.2d at 1160. The holding of *Edney*, our parenthetical in *Smith*, and the Washington court's limitation that the prosecution could use Dr. Harris only to rebut expert testimony submitted by Pawlyk are consistent with *Buchanan's* explanation that the prosecution may introduce the testimony of a former defense-retained psychiatrist in rebuttal.

Our result also comports with the decisions of other circuits. *See, e.g., Lange v. Young*, 869 F.2d 1008, 1013 (7th Cir.1989); *Noggle v. Marshall*, 706 F.2d 1408, 1414 (6th Cir.1983); *Granviel, supra; Edney; supra.* In each of these cases, the courts have acknowledged that a defendant's rights are not violated by the prosecution's offer into evidence, in rebuttal to a mental status defense, of unfavorable psychiatric evidence resulting from the defendant's investigation of the viability of that defense.

We conclude, therefore, that the judgment of the district court is

**AFFIRMED.**

CANBY, Circuit Judge, dissenting:

With all due respect to the majority opinion, I dissent because I believe that Pawlyk's due process rights were violated when the prosecution introduced the testimony of Dr. Harris, whom the defense had selected as a defense psychiatrist but chose not to offer as a witness. In my view, a psychiatrist retained to assist the defense is not to be treated as a run-of-the-mill witness; due process requires recognition of his or her position as a member of the defense team.[1] Defense counsel should be able to employ the services of

---

1. The role of the defense psychiatrist is to be distinguished sharply from that of a neutral, court-appointed psychiatrist. In cases where an insanity defense is asserted, Washington law provides for the court appointment of two qualified experts, one of whom must be approved by the prosecuting attorney, to examine the defendant and report to the court. *See* Wash. Rev.Code § 10.77.060(1)(a). Such a report may constitutionally be made available to the prosecution. *See Buchanan v. Kentucky*, 483 U.S. 402, 423–24, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). The prosecution did not, however, follow that route in Pawlyk's case. Instead, it subpoenaed the psychiatrist that Pawlyk had retained to assist in his defense.

such a psychiatrist in preparing an insanity defense without running the risk of involuntarily creating evidence for the prosecution.

The Supreme Court portrayed clearly the role of the defense psychiatrist in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which held that an indigent defendant whose sanity is likely to be a significant factor at trial was entitled to a psychiatrist at state expense. *Ake* said:

> [W]ithout the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high.

*Ake,* 470 U.S. at 82, 105 S.Ct. 1087. Needless to say, several of these functions are often essential to an effective defense. Indeed, the Court considered the furnishing of a psychiatrist as one more step in the process of providing the defendant with the " 'basic tools of an adequate defense or appeal,' " *id.* at 77, 105 S.Ct. 1087 (quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)),—a process that included the furnishing of counsel to indigent defendants, *see id.* at 76, 105 S.Ct. 1087 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Thus a psychiatrist must be furnished to the defense because his or her assistance "may well be crucial to the defendant's ability to marshal his defense." *Id.* at 80, 105 S.Ct. 1087.

There can be little doubt, therefore, that the Supreme Court in *Ake* viewed the psychiatrist as an integral part of the defense team. Indeed, then-Justice Rehnquist dissented partly on the ground that "[a] psychiatrist is not an attorney, whose job it is to advocate." *Id.* at 92, 105 S.Ct. 1087 (Rehnquist, J., dissenting).

It was against this background that our court decided *Smith v. McCormick,* 914 F.2d 1153 (9th Cir.1990), the rationale of which controls Pawlyk's case. In *Smith,* the defendant requested a state-appointed psychiatrist to assist the defense in presenting a case of mitigation in the penalty phase of a death penalty case. Instead of appointing a psychiatrist to aid the defense, the state court appointed a neutral psychiatrist to report directly to the court. We held that this procedure failed to provide Smith with due process of law.[2] *See id.* at 1158–59. Some of our reasoning is highly relevant to Pawlyk's case. We observed that a defense psychiatrist, rather than a neutral psychiatrist, was essential because "[c]ompetent counsel would want to refrain from introducing harmful testimony to the factfinder, but could still ask the court-appointed psychiatrist to consider other lines of analysis and to help prepare other forms of defense." *Id.* at 1159. Indeed, counsel "might choose not to present testimony on certain forms of mental impairment at all." *Id.* Most important for present purposes, we stated:

> We further note that since defense counsel cannot predict the outcome of a psychiatric evaluation, *to grant court-appointed psychiatric assistance only on condition of automatic full disclosure to the fact finder impermissibly compromises presentation of an effective de-*

---

**2.** The Tenth Circuit has similarly concluded that *Ake* establishes the right to a partisan expert. *See, e.g., United States v. Crews,* 781 F.2d 826, 834 (10th Cir.1986). The Fifth and Eleventh Circuits, however, have reached a contrary conclusion. *See, e.g., Glass v. Blackburn,* 791 F.2d 1165, 1169 (5th Cir.1986); *Henderson v. Dugger,* 925 F.2d 1309, 1315–16 (11th Cir.1991), *modified,* 968 F.2d 1070 (11th Cir.1992).

*fense,* by depriving him of an "adequate opportunity to present [his] claims fairly within the adversary system." [*Ake,* 470 U.S. at 77, 105 S.Ct. 1087 (internal quotation marks and citation omitted).] Competent psychiatric assistance in preparing the defense is a "basic tool" that must be provided to the defense. *Id.* To impose such a condition as full disclosure takes away the efficacy of the tool.

*Id.* at 1159 (emphasis added). We went on to quote at length from the decision of the Third Circuit in *United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975), which held communications to a defense psychiatrist to be privileged:

> The issue here is whether a defense counsel in a case involving a potential defense of insanity must run the risk that a psychiatric expert whom he hires to advise him with respect to the defendant's mental condition may be forced to be an involuntary government witness. The effect of such a rule would, we think, have the inevitable effect of depriving defendants of the effective assistance of counsel in such cases.... Disclosures made to the attorney cannot be used to furnish proof in the government's case. Disclosures made to the attorney's expert should be equally unavailable, at least until he is placed on the witness stand. The attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness.

*Smith,* 914 F.2d at 1160 (quoting *Alvarez,* 519 F.2d at 1046–47). Having quoted this and other passages from *Alvarez,* we then flatly said in *Smith:* "We agree with the

Third Circuit that a defendant's communication with her psychiatrist is protected up to the point of testimonial use of *that communication." Id.* (emphasis added).[3]

These pronouncements all apply to Pawlyk's case. Defense counsel retained Dr. Harris as a defense psychiatrist but elected not to have him testify. The effect of the State's compelling Dr. Harris to testify as a prosecution witness was to impose upon Pawlyk's counsel the very condition that *Alvarez* and *Smith* held to be an impermissible interference with the preparation of a defense. Part of the defense team was compelled to become part of the prosecution team. Our precedent in *Smith* does not permit that procedure.

The majority opinion emphasizes that the Constitution requires only one defense psychiatrist to be appointed at state expense, *see Ake,* 470 U.S. at 79, 105 S.Ct. 1087, and that, if Dr. Harris alone had been so appointed, Pawlyk might well have been forced to introduce Dr. Harris's testimony or abandon his insanity defense. That argument assumes that Pawlyk's insanity defense could not have been based on other evidence, a point that has never been explored. In any event, the majority's hypothetical misses the point. As I have just explained, the constitutional evil that *Smith* and *Alvarez* labored to avoid was the interference with defense counsel's effective representation caused by the threat that counsel might unwillingly produce evidence for the prosecution. That interference occurred here.

The majority opinion takes the view that the defense necessarily made Dr. Harris available to the prosecution when it put on an insanity defense and presented

**3.** The State suggests that this quoted statement is dictum. I disagree. Our court in *Smith* was required to decide the extent to which the prosecution could compel disclosure of a defense-selected, *Ake*-expert's opinions. Rather than announce an all-or-nothing rule, *Smith* adopted the limiting principle outlined in *Alvarez.* The limitation is integral to the *Smith* decision.

the testimony of Dr. Tanay in support of it. It states that *Buchanan v. Kentucky*, 483 U.S. 402, 425, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), and *Estelle v. Smith*, 451 U.S. 454, 465, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), placed Pawlyk's counsel on notice that when Pawlyk submitted to a psychiatric examination by Dr. Harris, the results could be used by the prosecution in rebuttal of an insanity defense. *Buchanan* and *Estelle v. Smith*, however, dealt respectively with the right to remain silent in the face of questioning by a *neutral, court-appointed* psychiatrist, and with the right of defendant's counsel to be present at such an interview. The fact that the prosecution can make use of such neutral psychiatrists, once an insanity defense is asserted, says nothing with regard to the prosecution's right to use a nontestifying *defense* psychiatrist when such a defense is asserted.[4] Moreover, our decision in *Smith* states that a defendant's communication with a defense psychiatrist is protected from the prosecution until the defense makes "testimonial use of *that* communication." Permitting the State to use Dr. Harris's testimony merely because the defense raised the insanity issue and called Dr. Tanay is utterly inconsistent with the rationale of *Smith*, and of *Alvarez* upon which it relies. It puts the defense at risk of creating a prosecution witness when it employs Dr. Harris in preparation of the defense. As *Alvarez* stated, "[t]he attorney should not be inhibited from consulting *one or more* experts, with possibly conflicting views, by the fear that in doing so he may be assisting the

government in meeting its burden of proof." *Alvarez*, 519 F.2d at 1047 (emphasis added). The State's action in using Dr. Harris as a prosecution witness creates precisely such an impermissible effect; under our ruling in *Smith* it denied Pawlyk due process of law.

I recognize that some other circuits have ruled that assertion of an insanity defense opens the door to prosecutorial use of a defense expert's report. *See Lange v. Young*, 869 F.2d 1008, 1012–14 (7th Cir. 1989); *Noggle v. Marshall*, 706 F.2d 1408, 1415–17 (6th Cir.1983); *Granviel v. Estelle*, 655 F.2d 673, 682–83 (5th Cir.1981). As the State points out, these cases suggest that the scope of the psychiatrist-patient privilege is not a constitutional issue. Unlike those circuits, however, we are subject to the precedential effect of our *Smith* decision, which clearly did view the issue as constitutional and decided it in favor of the defendant. Moreover, with all due respect to these other circuits, I find *Smith*'s position more persuasive. I am supported in this view by Justice Marshall, the author of *Ake*, who dissented from the denial of review of the Sixth Circuit's decision in *Granviel*:

Ake mandates the provision of a psychiatrist who will be part of the defense team and serve the defendant's interests in the context of our adversarial system. To allow the prosecution to enlist the psychiatrist's efforts to help secure the defendant's conviction would deprive an indigent defendant of the protections

---

4. It is also problematic to hold that Pawlyk's counsel was placed on notice that Dr. Harris's testimony might be used by the prosecution, when the State's discovery rules seemed to require disclosure only of witnesses the defense intended to call or of reports that it intended to introduce into evidence. *See State v. Pawlyk*, 115 Wash.2d 457, 481–87, 800 P.2d 338, 351–55 (1990) (dissenting opinion). Although I agree with the implicit holding of the majority here that the Washington Supreme Court's majority ruling in *Pawlyk* was not so surprising as to violate due process independently, it was sufficiently unexpected that Pawlyk's counsel cannot be charged with notice that Dr. Harris's testimony could be used if he was not called by the defense.

that our adversarial process affords all other defendants.

*Granviel v. Texas,* 495 U.S. 963, 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990) (Marshall, J., dissenting from denial of certiorari).

I conclude, therefore, that, under *Ake* and our decision in *Smith,* the State violated Pawlyk's due process rights when the prosecution compelled the rebuttal testimony of Dr. Harris, a psychiatrist who had been retained to help prepare and present a defense but who had not testified or otherwise supplied evidence at the trial.

The error was not harmless. Dr. Harris was the only prosecution expert who had examined Pawlyk, and his rebuttal testimony was by far the most forceful on the crucial disputed issue—Pawlyk's mental state at the time he committed the offenses. The fact that Dr. Harris was originally retained to aid the defense was exploited by the State in argument. In my view, Dr. Harris's testimony " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). At the very least, we should be left with a "grave doubt as to harmlessness," requiring us to overturn the conviction. *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

For these reasons, I dissent from the decision of the majority, and would reverse the district court's judgment and remand with instructions to issue the writ unless the State, within a reasonable time, initiates a retrial of Pawlyk.[5]

---

**5.** I agree with the majority that Pawlyk's other claims lack merit. The trial court's insanity instructions to the jury, taken as a whole, were neither incorrect, misleading nor contradictory. The trial court's definition of the aggravating factor of a "common scheme or plan" was permitted by state law; it did not relieve the State of its burden of proof beyond a reasonable doubt, nor did it create a presumption of guilt.